### McINTYRE v. LEGON.

1. FRAUDULENT CONVEYANCE—FINDING OF FACT.—Where a mortgage was made to a *bona fide* creditor, and there is no proof of a participation by the absent mortgagee in any fraudulent intent on the part of the mortgagor, this court sustained the finding of the master and Circuit Judge, that the mortgage was valid.

2. ASSIGNMENT FOR CREDITORS—FINDINGS OF FACT.—Where master and Circuit Judge found that mortgages were executed with the *bona fide* intention of securing a debt, and not as a means of transferring the mortgagor's property to a preferred creditor, the mortgages did not operate as an assignment for the benefit of creditors, in violation of the law, notwithstanding they subsequently had that effect by reason of the fraudulent absconding of the mortgagor.

3. IBID.—DATE OF DELIVERY.—These mortgages having been admittedly delivered prior to the debtor's absconding, or to the attachment of other liens, it was immaterial to inquire whether or not they were delivered at their date, over three months before.

Before FRASER, J., Greenville, July, 1892.

This was an action by Charles C. McIntyre, for himself and other creditors, against Rudolph Legon and others, commenced September 21, 1891. On September 10, 1891, the defendant, Catherine Legon, seized certain personal property as the goods and chattels of Rudolph Legon, under her mortgage recorded September 5. The plaintiff attached these same goods at a later hour on the same day (September 10). There were also other attachments, but none prior to plaintiff's. Mrs. Legon had previously taken possession of the money on hand, and books of her husband, Rudolph, after his absconding on the 6th. From the Circuit decree in favor of Mrs. Legon, the creditors of Rudolph Legon appealed on the following grounds:

1. Because the said judge erred in holding: "It is also claimed that the said mortgages are void under the provisions of the General Statutes in reference to the assignments by insolvent debtors, by which preferences are given to one or more creditors. I do not see how any case is stated in the complaint under these sections. So far from alleging any undue preference to a creditor, the complaint alleges that the

said Rudolph Legon was not, at such date of execution, indebted to the said Catherine Legon in the said sum of forty-eight hundred dollars, nor, indeed, in any sum."

2. Because the said judge erred in holding: "While I think that the two mortgages were delivered to T. H. Cooke, for Mrs. Legon, and became valid and binding 20th May, 1891, it does not matter if they were not delivered until September 5th."

3. Because the said judge erred in holding that, "if the money he (Rudolph Legon) carried off with him was sufficient to pay his debts, if added to that which was left and in reach of his creditors, he could not be said to have been insolvent."

4. Because the said judge erred in not holding, as a matter of fact, that the mortgages executed unto Catherine Legon were delivered on September 5th, 1891, and were operative from such date, and not from May 20th, as claimed.

5. Because the said judge erred in not holding that the said mortgages were intended to operate as an assignment of the property of the said Rudolph Legon, and did so operate; and in not adjudging that the same were intended as an evasion of the assignment laws, and were invalid as creating a preference in favor of the said Catherine Legon.

6. Because the said judge erred in not finding, as a matter of fact, that Rudolph Legon was insolvent both on May 20th and September 5th, 1891.

7. Because the said judge erred in holding: "If he had made an assignment, it does not appear that his wife, Catherine, had notice or reasonable grounds to know or believe that he was insolvent."

8. Because the said judge erred in not sustaining plaintiff's second exception to the master's report, to wit: "That the said master erred in his finding of fact, that on May 20th, 1891, the said Rudolph Legon, to secure unto Catherine Legon the sum of $4,800, executed and delivered unto T. H. Cooke, to be kept for her, the mortgages mentioned in the complaint; and in his further finding, that such execution and delivery were absolute on that day;" whereas he should have held that the delivery unto T. H. Cooke on such day was not a delivery to Cath-

erine Legon, or for her benefit; that it was not effective as a delivery, and was not intended so to be, and that there was no delivery of said mortgage unto Catherine Legon, or for her benefit, until September 5th, 1891.

9. Because the said judge erred in not sustaining the 8th and 14th exceptions to the master's report, to wit: "That the said master erred in his conclusion of law, that the said mortgages were valid securities, and should be enforced; and that the said master erred in not reporting the order and rank of lien of the various attachments levied upon the property of Rudolph Legon."

10. Because the said judge erred in not sustaining the 15th exception to the master's report: "That the said master erred in not finding and adjudging that the said Catherine Legon must account to C. J. Pride, receiver, for the amount received by her from the proceeds of sale of the stock of Rudolph Legon."

*Messrs. H. J. Haynsworth* and *Benet, McCullough & Parker*, for appellants.

*Mr. John R. Bellinger*, contra.

March 18, 1893. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. The record shows the important facts of this case to be, substantially, as follows: Rudolph Legon was a retail liquor dealer in the city of Greenville. His visible property consisted of two stocks of liquors, &c., and a city lot, the latter mortgaged for nearly its full value. On May 20, 1891, Rudolph Legon employed Thompson H. Cooke, Esq., to draft two mortgages from himself to his wife, Catherine Legon, one covering the two stocks of liquors, and the other the said city lot, both to secure his own note to her for $4,800, given that day, and payable on January 1, 1892. Mrs. Legon was not present, but at that time was in Europe, and knew nothing of the transaction. Legon signed the papers, and left them with his attorney, Mr. Cooke, saying, "Keep the papers for her for the present, I may make some other arrangement about the matter." The attorney placed them in his

office desk, and kept them there, awaiting Legon's instructions. Mrs. Legon returned from abroad in the following July, but for a time nothing was said to her about the matter. On September 5, Legon called on his attorney, Judge Cooke, and instructed him to have the mortgages recorded, and give them to Mrs. Legon. On the same day he informed his clerks that he would be absent for awhile, and that all money received from sales and collections must be turned over to Mrs. Legon; and on September 6, having taken possession of all the money in bank and on hand, secretly fled the State. Judge Cooke had the mortgages recorded, and, on the 7th or 8th of September, delivered them to Mrs. Legon, which was the first time she knew of the mortgages.

On September 10, Mrs. Legon, having heard that the other creditors of Legon were about to attach the property, took charge of both stocks of liquors, closing one bar, and continuing to operate the other; whereupon the plaintiff, Charles C. McIntyre, for himself and other creditors, instituted this proceeding to have said transactions set aside, as being in violation of the assignment act, and fraudulent and void, for injunction, the appointment of a receiver, &c. All of the defendants answered except Rudolph Legon, who being in parts unknown, was served by publication, &c. His honor, Judge Kershaw, at chambers appointed C. J. Pride, Esq., receiver of both the real and personal estate, and referred it to the master to call in creditors, and especially to determine all issues of law which arise upon the pleadings in regard to the claim of the defendant, Catherine Legon.

The master took the testimony, which is all in the record, and reported as follows as to his findings of fact: "I. That on May 20, 1891, the defendant, Rudolph Legon, was justly indebted to his wife, Catherine Legon, in a sum greater than the amount of the mortgages mentioned in the complaint, to wit: in the sum of $7,083. II. That on that day the said Catherine Legon was in Europe, but that in order to secure to her the payment of $4,800, the said Rudolph Legon on said day executed and delivered to one T. H. Cooke, to be kept for her, the mortgages mentioned in the complaint; that said execution and

delivery was absolute and complete on that day. III. That by an agreement between said Rudolph Legon and said Cooke, the mortgages were not to be recorded until Legon should notify Cooke to have it done, and that this was not done until the 5th day of September, 1891. IV. That Catherine Legon returned from Europe on the 30th day of July, 1891, and after her return was told by Legon that he had executed certain papers for her benefit, and that she claimed the benefit of these papers when they were discovered. V. That these papers or mortgages were not intended by Legon to operate as an assignment of his property, but were honestly executed for the purpose of protecting Catherine Legon as a *bona fide* creditor. VI. That Legon was guilty of no fraud in executing and delivering these mortgages, and that Catherine Legon was guilty of none in receiving them. VII. That Legon never has made any assignment of his property for the benefit of his creditors, within the meaning of the assignment laws of this State. VIII. That said Legon was not insolvent either on the 20th of May, 1891, or on the 5th day of September, 1891, and that Catherine Legon had no reason to suppose he was."

*And as conclusions of law:* "(1) That said mortgages are valid securities and should be enforced. (2) That the said Catherine Legon is entitled to the proceeds of the mortgaged chattels, and to such parts of the proceeds of the realty as may remain after payment of the mortgages of Cauble and Beattie, not exceeding the amount of the mortgage debt. (3) That in fixing the amount of her claim the master has considered the $190, received by her from Legon's business after his departure. (4) That the mortgages did not operate as an assignment of the property of said Legon, within the meaning of the assignment law, and were not affected by that law. (5) That said mortgage, not having been intended to hinder and delay the creditors of Legon, and having been executed and delivered in *good faith* for a valuable consideration, are not repugnant to the Statute of Elizabeth. (6) That as to the defendant, Catherine Legon, the complaint be dismissed."

Upon exceptions to this report, the cause came on to be heard by his honor, Judge Fraser, who confirmed the report in all

respects, except that he did not think it was the proper practice in such cases to dismiss the complaint, and for that reason alone he did not dismiss the complaint as to Catherine Legon. From this decree the plaintiff appeals to this court upon ten exceptions, which are all printed in the record, and need not be set out here, but probably ought to appear in the report of the case.

This action seems to have been brought with the double view: to set aside the mortgages given by the debtor, Rudolph Legon, to his wife, Catherine, as being without consideration, to hinder, delay, and defraud the other creditors of Legon; or that they were really intended as an assignment, to transfer all the tangible property of Legon to his wife, in violation of the provisions of the assignment act, against preferences, contained in section 2014 of the General Statutes.

As to the first charge, that the mortgages were void for fraud under the Statute of Elizabeth. There was no evidence to sustain the allegation that the mortgages in question were without consideration, fraudulent, and void. Both the referee and the Circuit Judge found, as a matter of fact, that Mrs. Legon was a *bona fide* creditor of her husband, Rudolph Legon, and there is no exception to that finding. In order to sustain an allegation that a conveyance is void for actual fraud, it is necessary to show that the donee of the conveyance joined in the transaction, and was *particeps criminis* in the perpetration of the fraud. There is no such proof in this case. Mrs. Legon was not in the country when her husband had the mortgages executed for her benefit, and she had nothing whatever to do with the matter, and it seems was in entire ignorance of the embarrassments of her husband. So we need not recur to this subject again.

It is insisted, however, that section 2014 of the General Statutes declares, that "any assignment of an insolvent debtor of his or her property for the benefit of his or her creditors, in which any preference or priority is given to any creditor or creditors * * * shall be absolutely null and void, and of no effect whatever." In a case coming within the purview of this act, the assignment is made abso-

lutely void, with or without the concurrence of the preferred creditor.    The thing aimed at by the inhibition of the act seems to have been simply the unlawful preference.    But was there an assignment in this case so as to bring it within the act upon the subject?    That must depend upon the character of the case. There was certainly no formal assignment, but mortgages in the usual form, which the debtor had a right to make, provided they were executed in good faith, *bona fide* intended to secure the debt due to Mrs. Legon; but if they were put in that form as a mere device to evade the law as to the assignment—if they in effect accomplished, and were intended to accomplish, the very purpose of an assignment—then they were tantamount to an assignment, and should be so treated.    The rule by which that question should be determined was stated by the present Chief Justice in the case of *Austin, Nichols & Co.* v. *Morris*, 23 S. C., 407, as follows: ''I do not doubt that an insolvent debtor may, by a *bona fide* mortgage, which is intended merely as a security, prefer one creditor, yet if the mortgage is designed, not as a security, but as a means of transferring his property to one or more of his creditors in preference of others, it seems to me that it is, in effect, though not in form, an assignment, and comes within the mischief intended to be suppressed by section 2014 of the General Statutes.''

Taking this as our guide, let us apply the rule to this case. The question is really one of fact.    The referee found ''that the mortgages were not intended by Legon to operate as an assignment of his property, but were honestly executed for the purpose of protecting Catherine Legon as a *bona fide* creditor.'' The Circuit Judge concurred in this finding, and under the well known rule of this court, it will not be disturbed unless it is against the weight of the testimony.    We have read the testimony carefully, and it does seem that, under the peculiar circumstances of the case, the mortgages have very much the same effect as an assignment would have, in transferring the whole of the debtor's tangible property to one creditor; but that is largely due to the fact that the debtor, after executing the mortgages, left the country with a large (the precise

amount not known) amount of cash, for which the deserted wife is in no way responsible.

It also appears that on May 20, 1891, when Mrs. Legon was in Europe, after the mortgages were signed, they were left for a time with the attorney who had prepared them; and from that circumstance it was strongly urged that, in fact, they were not delivered until September 5th. But it is quite clear that they were delivered before the debtor absconded, or any of the other creditors had sued or attached his property; and, therefore, we are unable to see that, in its bearing upon the issue involved, it makes any difference whether, as a matter of fact, the mortgages were formally and legally delivered when they were signed on May 20, or on September 5, 1891. We can not say that the findings of the referee, concurred in by the Circuit Judge, are not sustained by the evidence.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.