6685

TOWNES, TRUSTEE, v. STULTZ & BAUER.

1. EQUITY—APPEAL—ASSIGNMENT—FRAUD—ACCOUNTING.—An action to set aside a transfer of assets by a debtor to one creditor in preference to others within four months next preceding adjudication of bankruptcy, charging fraud in the transaction, requiring a long and intricate accounting and seeking payment of amount so transferred to trustee, is in equity, and on appeal this Court will review the findings below.
   *Hodges* v. *Kohn,* 67 S. C., 69, and *Hodges* v. *Bank,* 70 S. C., 478, *distinguished from this case.*
2. DEBTOR AND CREDITOR—FRAUD—NOTICE.—The evidence in this case shows sufficient facts within the knowledge of defendant to have put a prudent man on inquiry as to the solvency of his debtor.
3. IBID.—IBID.—BANKRUPT.—Under an agreement that whatever securities were taken by the buyer for pianos sold to him and by him should be turned over to the seller until he was paid in full, a trustee in bankruptcy is not entitled to securities taken for pianos sold under this contract and turned over to the original seller within four months of adjudication of bankruptcy, but the trustee is entitled to the proceeds of all other securities turned over by the debtor to the original seller to secure his account within said time.
4. REHEARING refused.

Before DANTZLER, J., Greenville, February, 1906. Modified.

Action by S. O. Townes, trustee of the bankrupt estate of M. L. Alexander against Stultz & Bauer. From Circuit decree, defendants appeal.

*Messrs. Cothran, Dean & Cothran,* and *Haynesworth & Patterson,* for appellant, cite: *When preferences are voidable:* 64 S. C., 457; 69 S. C., 23; 97 U. S., 80; 102 Fed., 735. *This is an action in equity and this Court may review the facts:* 56 S. C., 154; 55 S. C., 198; 67 S. C., 402.

*Messrs. McCullough & McSwain* and *Oscar Hodges,* contra, cite: *Questions of fact cannot be reviewed by this Court in this case:* 70 S. C., 478; 67 S. C., 69. *That a decree is beyond the scope of the complaint cannot be made here for the first time:* 69 S. C., 460.

The opinion in this case was filed September 7, 1907, but remittitur held up on petition for rehearing until

October 8, 1907. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. M. L. Alexander, a dealer in pianos, organs, machines, etc., in Greenville, S. C., was in October, 1900, adjudged a bankrupt by the United States District Court for South Carolina. Thereafter in April, the plaintiff herein, S. A. Townes, was appointed trustee of the bankrupt estate and in that capacity in January, 1905, began this action against the defendant corporation, Stultz & Bauer, alleging that the bankrupt, M. L. Alexander, for the purpose of preferring that firm to other creditors, assigned to it certain collateral papers and contracts under a written agreement that defendant should collect them and turn all excess over to bankrupt's wife. The complaint, among other things, asks judgment for seven thousand dollars with interest from May, 1901; that the transfer made by said Alexander to the defendant be null and void; and that said defendant also be required to account for all

moneys collected on account of said assets belonging to the estate of Alexander. The matter was referred to J. W. Gray, Esq., master for Greenville County, to take testimony and report his conclusions of law and fact to the Court of Common Pleas. After reference, he reported that the defendant was indebted to the plaintiff in the sum of $3,033.73 together with costs of the action, and further, that the defendant be required to surrender all notes and leases still in its hands which had not been collected. On appeal to the Circuit Court, Judge Dantzler, in a decree of February 13th, 1906, affirmed the report of the master. Defendant now seeks relief at the hands of this Court.

The first eight exceptions involve questions of fact, and respondent, relying on the cases of *Hodges* v. *Kohn,* 67 S. C., 69, 45 S. E., 102, and *Hodges* v. *Bank,* 70 S. C., 478, 50 S. E., 192, contends that they cannot be considered by this Court. This case is distinguished from those, however, by the fact that here, in addition to the mere money demand, it is asked that the whole transaction be set aside and the defendant be required to account for all moneys collected on account of assets belonging to the estate of M. L. Alexander. The entire transaction is alleged to have been fraudulent. According to the rule laid down by Pomeroy in his Equity Jurisprudence, section 911, a court of law has jurisdiction in those cases of fraud only where the primary right and the remedy both being legal, complete and satisfactory determination of the issues may be had. Where the remedy is inadequate, the far-reaching power of a court of equity must be called into action. Again, where a case involves an intricate accounting, one which a jury, under the ordinary circumstances and opportunities which the court room affords, could not be expected to make, it must devolve upon a court of equity to award to each of the parties his right. Such being the jurisdiction of the court, it can hardly be questioned that in hearing this case the Court sat as a court of equity and not as a court of law, for the reason that the legal remedy would

have been inadequate and a very intricate accounting is involved. Therefore this Court not only has power to review the findings of fact by the Court below, but the duty devolves upon it so to do.

Error is next alleged on the part of the Court below in holding that the defendant had or should have had knowledge of M. L. Alexander's bankrupt condition. This is one, or in fact it may be said that this is the pivotal question in the case. Without such knowledge or facts sufficient to put a prudent person on inquiry and thus lead to such information the transaction could not be said to be fraudulent, and thus would not be set aside. That there is not such an absence of facts here as would put a person on inquiry seems to be evident. True, there is testimony that the business was "in full blast," but some time prior to the assignment of the collateral in dispute Alexander had been behind in his paymenets. When he was approached by Golden, agent of Stultz & Bauer, he was unable to make practically any payment and turned over as collateral papers of other firms. Granted that his house was full of pianos, etc., this, in our opinion, should have made the defendant's agent more careful, for since the bankrupt was so far behind in his payment to one creditor it would be a reasonable and probable supposition that he was likewise very far behind in his other accounts. In addition to such reminders as these there is the positive testimony of the bankrupt that he had Golden come to his place of business where he expressly told him that he must fail. While it is true that there are witnesses who swear that they would not believe Alexander on oath, yet the contract entered into on that date seems to substantiate his statements. It seldom happens, we think, that a person has so departed from the paths of rectitude and truthfulness that he cannot under any circumstances state facts as they are. Many a transgressor, very untruthful though he be, urged on by the desire to be revenged on his unfaithful accomplice has revealed to the world truths which must otherwise

24—78

have remained forever hidden. Such it seems was the case here. There, too, are the letters written by Golden to Alexander, which, to say the least of them, savor very much of fraudulent intention. Their tone is certainly very far from honest openness and frankness, a tone which, to our mind, defendant falls very short of explaining. We are of the opinion, therefore, that the finding of the Court below on this point should be sustained.

The difficult question arises in seeking to reach a correct conclusion as to the amount of the assets of M. L. Alexander in the defendant's hands. Stultz & Bauer seeks to relieve itself to a certain extent by an agreement under which it is alleged that the corporation was doing business with Alexander. This agreement, however, never having been recorded, cannot avail the defendant and we therefore pursue our inquiry independent of it. Nevertheless we think it may be of aid to us in reaching a proper conclusion in the case. From a system of cards used by the defendant to keep the transactions as to each piano sold, the referee found that during the four months previous to the adjudication of bankruptcy the defendant had received $5,955.64. He concludes, however, that since the evidence did not show that all of these accounts were assigned during the four months period, the defendant could not be held for the entire amount. We think the record will be searched in vain for evidence showing that any of these accounts were assigned during that period. Here then the existing agreement gives us light, or at least leads us to a presumption. The condition upon which the pianos were furnished being that any security taken on them be turned over to the defendant, it is reasonable to suppose that immediately upon the sale of a piano the papers taken would be at once turned over. Of course, if this agreement was violated and the papers were found in the hands of Alexander or it was proved that he transferred them during the four months period, then the agreement not having been recorded such papers would be assets of Alexander. A reference to the

cards offered in evidence shows that the latest sale of
pianos by Alexander was in June, 1899. There were several
others sold by different parties, three being sold by the
sheriff. Hence, if we presume that the contract was com-
plied with, which we may legitimately do in the absence of
evidence to the contrary, assignments of security for these
sales had been made prior to the agreement of June, 1900.
The testimony seems to substantiate this presumption. Miss
Alexander, bookkeeper for M. L. Alexander, testified that
on June the 29th, 1900, only notes on pianos of other makes
than Stultz & Bauer were assigned to that corporation. M.
L. Alexander testified himself that at that time according
to his calculation defendant had about seven thousand dol-
lars' worth of assignments from him, but he goes further
and testifies that on that occasion he transferred collateral
only to the amount of $3,873.65, thus showing that there
had been previous assignments to the defendant. W. C.
Golden's receipt of that date is only for that amount and a
list of the collateral set out in the record as Exhibit 8 aggre-
gates the same. It is as follows:

| | | |
|---|---:|---:|
| J. H. Hamlon, balance due | $ 245 | 00 |
| W. W. Cole | 343 | 00 |
| B. K. Beacham | 225 | 00 |
| B. B. Pearson | 210 | 00 |
| T. M. Knox | 125 | 00 |
| J. A. Baumgarden | 310 | 00 |
| W. T. J. Philips | 175 | 00 |
| H. A. Miller | 113 | 50 |
| J. H. Stallnecker | 238 | 00 |
| L. P. Deaton | 225 | 00 |
| E. J. Youngblood | 135 | 37 |
| J. H. Feagle | 75 | 00 |
| W. E. Touchstone | 178 | 78 |
| O. B. Brawer | 85 | 00 |
| Annie Loadholt | 175 | 00 |
| J. L. Buist | 218 | 00 |
| J. S. Oliver | 175 | 00 |

| | |
|---|---|
| A. S. Dukes .. .. .. .. .. .. .. .. .. .. | 296 00 |
| F. P. Yates.. .. .. .. .. .. .. .. .. .. | 200 00 |
| J. D. Leonard.. .. .. .. .. .. .. .. .. | 126 00 |
| | $3,873 65 |

There is absolutely nothing to show a transfer of any other papers subsequent to this transaction. Hence it is our opinion that all papers taken by Alexander for Stultz & Bauer goods were transferred prior to four months preceding the bankruptcy adjudication. Then any collection made by the company or by its agents on these accounts would be the defendant's property until it had received payment in full for goods so sold to Alexander. Even Alexander in making collections for them after he had transferred the papers acted only as their agent. Therefore if payments made by him to the company are shown to be on these accounts the defendant cannot be compelled to repay such collections. Taking up Exhibits 9, 13, 14, 15, 16, in which the collections are itemized, the names of the payer being given, and in each case referring to the list of collateral above quoted, it will be found that in no case is a payment made by a party named in that list. Reference to the cards will show that in each case the payer is a debtor named in these accounts transferred to the defendant. Stultz & Bauer, therefore, have a right to the payments so collected and to continue to hold these securities so transferred to them unaffected by the bankruptcy proceedings until they are paid in full. Of course just as soon as defendant receives the money due it for pianos, the accounts revert to M. L. Alexander. It must therefore account strictly for all collections made on them.

With collateral securities, however, it is different. They being transferred within the four months period any collection made on them or to be made is the property of the trustee. The list is set out above and is receipted for by W. C. Golden as agent of Stultz & Bauer. On the same day that this assignment was made the defendant, through its

agent, turned over to M. L. Alexander for collection the following list, aggregating thirteen hundred and twenty-five dollars:

| | | |
|---|---|---|
| Note of Dr. T. D. Leonard.. .. .. .. ..$ | 126 | 00 |
| Note of F. B. Yates.. .. ., .. .. .. | 200 | 00 |
| Note of A. L. Dukes.... .. .. .. .. | 296 | 00 |
| Note of J. S. Oliver.. .. .. .. .. .. | 175 | 00 |
| Note of J. L. Buist.. .. .. .. .. .. | 218 | 00 |
| Note of Annie Loadholt .. .. .. .. .. | 175 | 00 |
| Note of E. J. Youngblood.. .. .. .. .. | 135 | 00 |

$1,325  00

In collecting these he would therefore act as agent of Stultz & Bauer. This being so his possession of these securities would be the possession of the defendant and it would be responsible for any collections made on them and must surrender or be held accountable for any of these notes not so collected. It is also responsible for any collection made by it or its agents on the securities not retransferred to M. L. Alexander, and must surrender or be held to account for those not collected. Exhibit 12 contains a number of payments made by Alexander to the defendant. They not being itemized as in the case of the others and therefore not to be credited on the regular accounts kept by the defendant, we presume, in the light of the evidence, that they were made on the collateral securities to be collected by Alexander for Stultz & Bauer. They aggregate $813.88. Defendant itself, taking its own figures as a basis of the calculation, collected $868.50 on those retained by itself for collection. The evidence shows that collections made by Goodlet and included by the referee were on Stultz & Bauer paper and, therefore, according to the conclusions reached above, should not have been made a part of his judgment. The payment of one hundred and fifty dollars in cash on June 29, 1900, was properly included.

The judgment of this Court therefore is, that the judgment of the Court below be modified as follows: That the

defendant pay over to the trustee $1,832.38 with interest and the cost of the action, and also that it be required to surrender, or be held to account for, collateral notes and leases which were transferred to it and still remain uncollected.

October 8, 1907. PER CURIAM. After a careful consideration of the petition herein the Court is satified that no material question of law or fact has been overlooked.

It is therefore ordered that the petition be dismissed and the order heretofore issued granting a stay of the remittitur be revoked.