14486

GARDNER .v. KIRVEN *ET AL.*

(Two cases)

(191 S. E., 814)

February, 1936.

*Messrs. L. D. Lide, Samuel Want* and *Killian Barwick,* for appellants, cite:

*Messrs. L. M. Lawson* and *Robinson & Robinson,* for respondent, cite:

May 18, 1937.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

I regret that I am unable to agree with Mr. Justice Baker that the judgment in this case should be reversed in part. A careful study of the record convinces me that Judge Oxner correctly decided all questions involved. His order, therefore, which will be reported, is affirmed *in toto.*

MESSRS. JUSTICES CARTER and BONHAM concur.

MESSRS. JUSTICES BAKER and FISHBURNE dissent.

MR. JUSTICE BAKER (dissenting in part):

On the —— day of October, 1930, Idella Blackmon, through her guardian *ad litem,* commenced an action in the Court of Common Pleas for Darlingtoon County against John K. Kirven for damages growing out of an alleged unlawful assault committed September 29, 1930. Upon a trial of the cause, a verdict by a jury in the sum of $5,000.00 was awarded plaintiff. The judgment which was entered on this verdict was affirmed by this Court. No portion of this judgment has been paid.

On November 1, 1930, and the day on which the answer of John K. Kirven to the Blackmon complaint was served, the said John K. Kirven conveyed to his daughter, Emmie B. Kirven, for a recited consideration of $23,940.08, nine parcels of land; and to his wife, Anna B. Kirven, for a .recited consideration of $5,816.06, seven tracts of land. Both of these deeds were recorded in the office of the Clerk of Court for Darlington County on November 25, 1930. The lands conveyed by these deeds were situate in Darlington County, and comprised the entire real estate holdings of John K. Kirven.

At the time of these conveyances, there was on record in Darlington County a judgment against John K. Kirven in the sum of $10,000.00, from which judgment an appeal was pending in this Court. Thereafter the judgment was affirmed, and Emmie B. Kirven paid same, with interest and costs, taking an assignment of the judgment. Of course, this judgment constituted a lien on the real estate conveyed to Kirven's wife and daughter.

For the purpose of this case, it may be admitted, and is probably a fact, that the real estate conveyed was all the property owned by John K. Kirven, save and except a bond and mortgage of real estate securing same from F. W. Law to A. Hyman, on which there was a balance due of $21,-000.00, which had been assigned to Kirven. This bond and mortgage represented the balance due on purchase price of a tract of land in Darlington County, containing 399 acres, more or less, and which had been purchased by Law from Hyman at and for $29,000.00. Law had become insolvent, and the bond and mortgage were worth no more than the value of the security, which at that time was variously estimated to be from $6,000.00 to $10,000.00.

The Law bond and mortgage were retained by Kirven for the specific purpose of having sufficient property out of which, in the abundance of precaution, and under the advice of learned and ethical counsel, to pay any possible or

probable judgment Idella Blackmon might procure against him.

The $10,000.00 judgment, if ever in the picture, vanishes for the reason that it was paid without resort, or attempted resort, to the Law papers.

On November 1, 1930, the date of the conveyance of the real estate of John K. Kirven, he owed no debts to any one save his wife and daughter, the appellants herein, the contingent liability by reason of the pending Blackmon suit, and other suits by other potential plaintiffs of a like nature which were threatened against him, but which did not materialize. The $10,000.00 judgment had as its basis an unlawful and indecent assault upon a woman plaintiff. Suits of this nature against Kirven had passed from the "accident" stage to the "coincidence" stage, and were about to become a "habit."

It may well be that while Mr. Kirven, a man, we judge, to be at least definitely "middle aged," was suffering from a form of insanity probably best described as ego or erotic mania, his mind was not sufficiently impaired to render him incapable of recognizing his responsibility to the welfare of his family. In fact, the question of mental incapacity does not enter into the case.

Considerable of the record in this case is taken up with financial transactions concerning the Law bond and mortgage subsequent to November 1, 1930, the date on which the deeds to Mrs. and Miss Kirven were executed, and it will be necessary to hereinafter refer to such transactions although subsequent transaction in which this security or property was involved cannot but remotely affect the questions before the Court. However, in order to have a proper conception of the issues raised by this appeal, it will be necessary to briefly refer to the Law papers from time to time.

Lest we overlook doing so, we call attention to the fact that there is a difference when considering if the conveyance

of one's property is fraudulent as against a fixed liability by contract entered into with a creditor on the basis that such one is of financial responsibility, and a mere contingent liability in a suit in tort, especially where neither physical injury nor monetary damage has been suffered by such contingent creditor.

It was not until November 3, 1932, that a trial of the case of *Idella Blackmon, by her guardian ad litem, v. John K. Kirven,* was had, resulting as aforesaid in a verdict against Kirven in the sum of $5,000.00, which judgment was affirmed by the Supreme Court in opinion filed July 7, 1933. Following final judgment, an execution was issued and a *nulla bona* return made thereon. This was followed by supplemental proceedings and it is the testimony taken at the hearings therein, together with testimony taken before a referee appointed in this case, that constitutes the record.

On April 7, 1931, John K. Kirven borrowed from Peoples State Bank of South Carolina (Darlington branch) $775.00, pledging as security therefor the Law bond and mortgage. He paid on December 19, 1931, $250.00 on this indebtedness, and gave a renewal note for $525.00. This renewal note was not paid by John K. Kirven, but was paid by the appellant Emmie Kirven. Before Miss Kirven completed the payment of the note, the Receivers of Peoples State Bank of South Carolina, through Hon. Samuel Want, who was handling the affairs of the Darlington branch of this bank, sold the security and bid it in for the Receivers, upon the understanding, however, with Miss Kirven, that, if she paid the indebtedness, with all interest and costs, the security would be delivered to her. This she thereafter did, and came into the possession of the Law bond and mortgage. There has been a complete ratification of the acts of Mr. Want by the Receivers in the handling of the collection of this indebtedness and deliverance of the security. In other words, there is no claim by the Receivers of the bank that they have any further interest in the Law bond and mortgage, not-

withstanding the purchase of these papers in their names when it was sold under the collateral note of John K. Kirven.

The pertinency of the statement of fact immediately following will be seen later in the discussion of this case. At the time the original loan of $775.00 was made to John K. Kirven, Mr. Want was an active director of the Darlington branch of the bank above referred to, and in charge of all loans made by it, and made the loan to Mr. Kirven.

When Miss Emmie Kirven was testifying in the supplementary proceedings on September 1, 1933, she at that time had not paid but $230.00 on the note of her father to the bank. She then and there offered to relinquish and release any interest in the paper upon being refunded this $230.00, provided the Receivers of the bank were willing that the Law papers go back to her father. At the conclusion of this hearing, Mr. Want, then attorney for Miss Kirven, made the following statement: "At each pertinent time Miss Kirven desires to put into the record a new statement from the Receivers of the bank showing the actual payments made by her up to the particular time on the note of J. K. Kirven, secured by the F. W. Law mortgage."

Miss Emmie Kirven also paid taxes for several years on the lands covered by the Law mortgage, thereby saving the lands passing beyond the reach of the judgment creditor.

On September 1, 1933, in the supplemental proceedings on the Blackmon judgment, Hon. E. C. Dennis, Circuit Judge, passed an order appointing C. E. Gardner, as Receiver of all of the property and assets of John K. Kirven, and authorized him to take any and all necessary steps and proceedings by litigation, which he might deem proper and necessary, for the purpose of recovering the title and possession of any property of said John K. Kirven, including any property and assets which John K. Kirven may have conveyed away unlawfully, or in fraud of his creditors, and especially in fraud of Idella (Blackmon) Warr.

Proceedings were instituted by Gardner, as Receiver, in the Court of Common Pleas for Darlington County, to set aside the conveyances of Mr. Kirven to his wife and daughter of his real estate; and also the assignment of certain bonds, mortgages, and choses in action, alleging in the first cause of action that John K. Kirven, voluntarily and for the purpose and with the intention of cheating and defrauding his creditors, especially Idella Blackmon, of the right to collect their debts, conveyed to appellants Emmie B. Kirven, his daughter, and Anna B. Kirven, his wife, large bodies of valuable land, describing the lands, and had assigned certain securities; and in a second cause of action it was alleged that these conveyances and assignments were made with the intent to hinder, delay, cheat, and defraud the creditors of John K. Kirven, and especially Idella Blackmon. In other words, the complaint alleges the conveyances to be in violation of Section 8696 of the Code of 1932 (Statute of Elizabeth); and Section 9106, Code of 1932 (Assignment Statute).

The Receiver also brought a proceeding in the United States District Court for the Eastern District of South Carolina, praying that the Receivers of the Peoples State Bank of South Carolina be instructed and directed to turn over the Law bond and mortgage to him, and that it be declared that any interest of Emmie B. Kirven be barred in this action. On the verified petition and complaint of Gardner, Receiver, Hon. J. Lyles Glenn, United States District Judge, issued his rule to show cause directed to the Receivers of Peoples State Bank, to Honorable Samuel Want, attorney for said last-named Receivers, and Emmie B. Kirven, why the Law bond and mortgage should not be delivered over to Gardner, as Receiver; and to produce said papers at the hearing.

It is unnecessary to set forth the return of Mr. Want. The Receivers for the bank disclaimed any interest in the security sought. Miss Kirven claimed an interest therein only

to the extent of the payments made by her to preserve the security.

Upon the above returns, Judge Glenn ordered the Law bond and mortgage to be turned over to Gardner, as Receiver, without prejudice to the rights of Emmie B. Kirven, to assert any claim she had in the receivership proceedings pending in the Court of Common Pleas for Darlington County. This she did, and was allowed a claim having priority to the judgment of Idella Blackmon to the extent of the amounts expended to preserve the security, subject to any credits of rents collected from the lands covered by the mortgage. This part of the judgment of the Circuit Court is not involved in this appeal.

Issue being joined on the question of setting aside the deeds from John K. Kirven to his wife and daughter, and as to the interest in the Law bond and mortgage of the appellant Emmie B. Kirven, resulted in a decree of Hon. G. Dewey Oxner, Circuit Judge, upholding the contention of Emmie B. Kirven as to moneys expended to preserve the Law security, but setting aside the conveyances from John K. Kirven to Anna B. Kirven, and Emmie B. Kirven, wife and daughter, respectively, appellants herein, on the ground that such conveyances were fraudulent, and made to hinder, delay, or defraud Idella Blackmon. This holding was based entirely as a violation of the Statute of Elizabeth.

From the decree of Judge Oxner, setting aside the deeds aforementioned, John K. Kirven, Emmie B. Kirven, and Anna B. Kirven appeal to this Court; and the respondent, Gardner, as Receiver, petitions that the decree of the Circuit Court be also upheld under the assignment statute.

It appears to be agreed that the issues before this Court are two: (1) Are the transfers from John K. Kirven to his wife, Anna B. Kirven, and to his daughter, Emmie B. Kirven, void as a violation of the Statute of Elizabeth, Section 8696? and (2) are the transfers by John K. Kirven to his wife, Anna B. Kirven, and to his daughter, Emmie B. Kir-

ven, void under the Assignment Act (Code 1932, § 9106)? and a third issue to be disposed of in the main by the Circuit Court, said third issue being: What are the rights of the respective parties in the Fred Law bond and mortgage now in the hands of C. E. Gardner, Receiver of John K. Kirven?

The following principles of law, applicable to this case, are well established in this State:

"To annul for fraud a deed based upon a valuable consideration it must not only be shown that the grantor intended thereby to hinder, delay, or defraud creditors, but it must also appear that the grantee participated in such fraudulent purpose." *McElwee v. Kennedy,* 56 S. C., 154, 170, 34 S. E., 86, 91; *E. Sternberger Co. v. Summerford et ux.,* 150 S. C., 60, 147 S. E., 627; *Lenhardt v. Ponder,* 64 S. C., 354, 364, 42 S. E., 169; *Beaufort Veneer & Package Co. et al. v. Hiers et al.,* 142 S. C., 78, 140 S. E., 238. See, also, *Austin v. Goddard et al.,* 164 S. C., 20, 161 S. E., 767; *Manship et al. v. Newton et ux.,* 105 S. C., 1, 89 S. E., 467; *McGee v. Wells,* 52 S. C., 472, 30 S. E., 602; *Gerald v. Gerald,* 28 S. C., 442, 6 S. E., 290; and numerous other South Carolina cases to the same effect.

"The consideration in a deed of conveyance is neither an essential nor a vital element therein, unless it be of a contractual nature. It has no legal status except to estop the grantor from alleging that it was without consideration and to prevent a resulting trust in the grantor. The validity of a deed does not depend upon the real consideration being expressed therein. The expressed consideration is the least important of all the elements of that instrument. It, in itself, grants no right, vests no title, and warrants no promise. Its purpose and function is complete when it fixes and identifies itself as either a 'good' or 'valuable' consideration.  *  *  * The question is: Is it of such character as to vest the title to the property therein described?  *  *  *  *A consideration, to be sufficient, need not be adequate; it need only be a valuable consideration, however small."* (Italics added.)

*Knighton v. Desportes Merc. Co.,* 119 S. C., 340, at pages 345 and 346, 112 S. E., 343, 344, quoted with approval in *E. Sternberger Co. v. Summerford, supra.*

The consideration for the deed need not be a "present consideration," but a debt of long standing may be the consideration. See *E. Sternberger Co. v. Summerford, supra; McIntyre v. Legon,* 38 S. C., 457, 17 S. E., 253; *Lowry v. Pinson,* 2 Bailey, 324, 23 Am. Dec., 140.

A conveyance by a husband to his wife, or a father to his daughter, in the payment of a *bona fide* debt of the husband to the wife, or a father to his daughter, is no more a badge of fraud, since the Constitution of 1868, than a conveyance by him to any other creditor would be. *McGee v. Wells, supra.*

"No human being can look into the heart and mind of another and discover what of good or evil may be there. Neither do the words of men always disclose the promptings of the inner self. Common experience has taught us that the surest index to the intents, motives, and purposes of men are their acts fairly and impartially judged, in the light of their surrounding circumstances. *No act is to be construed as evidencing an evil intent if it may be fairly construed otherwise.*" (Italics added.)

. *Border State Lumber Co. v. Edwards et al.,* 103 S. C., 391, 88 S. E., 537, 538, quoted with approval in *Re Nightingale's Estate,* 182 S. C., 527, 189 S. E., 890.

In an appeal in a chancery case, it is the duty of this Court to review the findings of fact. If such findings are sufficiently supported by the evidence to merit the approval of this Court, such findings will not be disturbed; but, if not sufficiently supported, such findings will be reversed. See *Parrott v. Dickson (Hall v. Walker et al.),* 151 S. C., 114, 148 S. E., 704, 63 A. L. R., 965.

This Court will not reverse the findings of fact by a Circuit Judge, even when based upon written testimony, unless satisfied that the clear result of undisputed testimony points

manifestly to a different conclusion from that reached by the Circuit Judge; *and, where the testimony is conflicting,* and the Circuit Judge has, upon weighing it, reached a conclusion which can be (is) supported by the testimony, this Court will not interfere, although there may be other testimony in the case pointing to a different conclusion. *Pollock et al. v. Carolina Interstate Building & Loan Ass'n et al.,* 51 S. C., 420, 29 S. E., 77, 64 Am. St. Rep., 683.

Where an appeal is taken from the findings of fact by a Circuit Judge, it is incumbent on the appellant to show that the decree of the Circuit Judge is against the weight of the evidence. *Atlantic Savings Bank of Charleston v. Rowland et al.,* 133 S. C., 1, 130 S. E., 57.

We do not believe we can improve on the statement of counsel for appellants that: " * * * · a fair statement of the governing rule would appear to be that this Court will usually accept the conclusions of the lower Court where the testimony is conflicting; or where the weight of the evidence supports the view of the lower Court; but that where the findings of the lower Court are not supported by a preponderance of the evidence, and more especially where evidence is lacking to support such findings, this Court will reverse. Also, it would appear from the foregoing, that where, as here, the testimony is substantially uncontradicted, and the conclusions of the lower Court are founded upon adverse inferences which are not supported by the record, and which amount to a total rejection of such testimony, this Court will reverse"—citing *Quattlebaum v. Taylor,* 45 S. C., 512, 23 S. E., 617; *Finley, Receiver, v. Cartwright et al.,* 55 S. C., 198, 33 S. E., 359; *Brown et al. v. Newell et al.,* 64 S. C., 27, 41 S. E., 835; *Townes, Trustee, v. Stultz & Bauer,* 78 S. C., 366, 59 S. E., 983, and *Winn v. Harby et al.,* 171 S. C., 301, 172 S. E., 135.

It will be noted that the principles of law above set out do not cover a voluntary conveyance; that is a conveyance without valuable consideration. If it is a voluntary conveyance,

it is immaterial whether the grantee knew of the intended fraud; and also whether the grantor had a fraudulent intent in the popular sense. As a man must be presumed to intend the natural consequences of his acts, a grantor who is indebted, and who makes a conveyance without consideration, will be presumed to have intended to defraud his creditors, and the grantee suffers no legal prejudice in losing the property in such a case. The presumption of fraud as to the grantor will be imputed to the grantee.

We will not undertake herein to discuss the numerous cases decided by this Court in which the issue was alleged fraudulent conveyances. While there are well-defined principles of law governing such an issue, like the question of what constitutes negligence, each case must, in its finality, be decided in accordance with its own peculiar facts.

In the decree of Judge Oxner, he states: "Our courts, in interpreting this statute [Statute of Elizabeth], have held that conveyances shall be set aside under two conditions: First, where the transfer is made by the grantor with the actual intent of defrauding his creditors where that intent is imputable to the grantee, even though there is a valuable consideration; and, second, where a transfer is made without actual intent to defraud the grantor's creditors, but without consideration." This is a correct concrete statement of the law.

It must be kept in mind that we are dealing with only one dissatisfied creditor, whose claim was merely potential at the time of the transfers—not a contract creditor who had dealt with the grantor on the basis of his financial ability to respond.

We now come to a discussion of the facts. Prior to the commencement of the suit of Idella Blackmon against John K. Kirven, Mrs. Ethel Kirven, a kinswoman by marriage, had succeeded in procuring a judgment in the sum of $10,-000.00 against said John K. Kirven in a suit in tort, the

basis of which was an alleged unlawful and indecent assault made upon her by Mr. Kirven. During the pendency of the Ethel Kirven suit, John K. Kirven appealed to his then counsel, Hon. Samuel Want, to prepare for his signature deeds conveying all of his real estate to his wife and daughter, stating that he owed them money and desired to protect them. Mr. Want at that time refused to prepare the deeds, and advised that it would be most indiscreet to make and execute such papers pending the litigation. Nothing was then done. Following the procurement of the judgment by Mrs. Ethel Kirven, a suit based on somewhat similar circumstances was commenced by Idella Blackmon against Kirven, asking damages. Although Mr. Want prepared the answer to this last-mentioned complaint he was not, speaking strictly, the attorney for Mr. Kirven in that case, and did not represent him therein. At the time Mr. Want prepared the said answer, Mr. Kirven advised him of the fact that, in addition to the Blackmon suit, several others were threatening to bring suit against him on account of alleged similar charges. With the knowledge on the part of Mr. Want that by reason of the unpopularity of Mr. Kirven in Darlington County, that to allege was to prove a cause of action, and Mr. Kirven again requesting him to prepare deeds for his real estate to his wife and daughter, to whom he claimed to be indebted, he did so, but not until Mr. Kirven reserved reasonably sufficient of his property (the Law bond and mortgage) to pay any probable judgment recovered in the *Blackmon case*. As aforementioned, this security at that time had an estimated value of $6,000.00 to $10,000.00.

The uncontradicted testimony is to the effect that in 1925 John K. Kirven had given his daughter Emmie B. Kirven $41,000.00 in money, bonds, and choses of action, and that going back as far as 1920 he had given her more than $50,000.00. Some of these gifts were evidenced by such as the following: Paid check dated January 19, 1925, in the sum of $16,000.00, payable to Emmie Kirven, signed by

John K. Kirven, drawn on Peoples Bank of Darlington, endorsed by Emmie Kirven; $15,000.00 loaned Mrs. A. B. Hamer, and mortgage taken in name of Emmie B. Kirven, the money being furnished by Mr. Kirven, but the security therefor (the bond or note and the mortgage) being given to Emmie Kirven; $8,000.00 or $8,500.00 paid A. Hyman for property in the City of Darlington, and deed taken in name of Emmie B. Kirven.

John K. Kirven borrowed from his daughter, out of the gifts he had made her, according to his testimony, considerable sums of money, and made investments for her from some moneys collected for her benefit. Miss Kirven demurred as to some of these investments, particularly $8,000.00 in cotton, the funds to purchase same being the proceeds from sale of her property in City of Darlington, the Hyman lot, and Mr. Kirven agreed to make any losses good. Mr. Kirven collected at one time $6,000.00 on the Hamer mortgage which he kept. We mention these two items which show a corroboration of the testimony of Mr. and Miss Kirven that he was indebted to her. The positive testimony of Mr. Kirven and Miss Kirven is that at the time of the execution of the deed in question Mr. Kirven was indebted to Emmie Kirven in a sum ranging from $20,000.00 to $22,000.00, and it was agreed between them that, with interest, the indebtedness was $23,940.08.

There is no evidence contradictory of the foregoing, and the record discloses that long before the Blackmon "episode," the basis of the tort action, Kirven was alleging that he was indebted to his wife and daughter.

With reference to the indebtedness of Mr. Kirven to his wife, Mrs. Anna B. Kirven, the testimony is uncontradicted that Mrs. Kirven had inherited $1,200.00 from her father and $700.00 from her mother; that Mr. Kirven had taken these funds. He said he had borrowed the money, but Mrs. Kirven testified that Mr. Kirven was to invest the funds for her. Be that as it may, Mr. Kirven got the money and

Mrs. Kirven was to be paid eight per cent. interest. In addition to this, Mrs. Kirven, seven or eight years prior to the taking of testimony in the supplementary proceedings, had let Mr. Kirven have $1,000.00 which she had in a bank, which he was to invest for her. No property at any time was placed in her name except of course the property conveyed her on November 1, 1930.

Respondent takes the position that the statute of limitation had run against the indebtedness of Mr. Kirven to Mrs. Kirven. A debtor can, after any number of years have elapsed, acknowledge a debt, and the statute of limitation cannot thereafter be pleaded as a defense even by such debtor, until it has again become applicable and effective. Of course, this could only apply to the $1,200.00 and $700.00 items, since the $1,000.00 item had come into the possession of Mr. Kirven as a borrower or as trustee within six years of November 1, 1930. If all such funds came into Mr. Kirven's possession as trustee to invest for the benefit of Mrs. Kirven, and we are inclined to the opinion that this was in fact the purpose of allowing Mr. Kirven to handle same, then limitations do not run in favor of a trustee against a *cestui que* trust. As to the daughter, Emmie B. Kirven, it could not be contended that limitations applied as the borrowings occurred between 1925 and 1930.

Counsel for appellants takes the position that as to Emmie B. Kirven there was an additional consideration of about $12,000.00, she having paid the first judgment against John K. Kirven in the sum of $10,000.00, which, with interest and costs, was approximately $12,000.00 when paid. We think it clear that she evidently used the proceeds from the sale of cotton for a portion of the $12,000.00 paid, and that she cannot claim this full amount and the $8,000.00, the proceeds from the sale of the Hyman city property which had been invested in cotton for her. Of course, as to the $5,000.00 Liberty bond and the amount she was compelled to borrow from the bank in order to pay the judg-

ment, these items are either a part of the consideration or she accepted deed subject to the lien of the judgment, which after all, in the circumstances of this case, is largely the same thing.

Notwithstanding the positive testimony of John K. Kirven, Emmie B. Kirven, and Anna B. Kirven, as to the indebtedness by the first named to the last two named, and there being no testimony to the contrary, the Circuit Judge held that the circumstances that the wife and daughter did not produce "a scratch of the pen" evidencing such indebtedness, and that, when John K. Kirven testified as to his "net worth" in the *Ethel Kirven case* against him, resulting in a $10,000.00 judgment, he did not mention any indebtedness to his wife and daughter, outweighed the above positive testimony. There is another circumstance mentioned in the decree, but as to this Judge Oxner was clearly in error, the record affirmatively so showing.

As between husband and wife, and father and daughter, it seems to us that it would have been most remarkable had appellants shown up in Court with promissory notes and memorandums of loans evidencing the indebtedness, and such notes and memorandums would have been subjected to the minutest scrutiny, and would have been at least suggestive of a "prepared" defense. As to there being no cancelled checks or bank statements introduced in evidence corroborative of the loans, we do not find in the record that any loan was made through the medium of a bank check, other than the $1,000.00 from Mrs. Anna B. Kirven. When Mrs. Kirven was examined as to this although she was given a most searching examination, she was not even asked in what bank she had this money, and apparently it was not seriously questioned that she had allowed Mr. Kirven to withdraw this money from the bank in which it was deposited, either as a loan or to invest for her. We cannot say that the failure to produce the bank records or cancelled check was any evidence that the "loan" had not been made.

The "circumstance" that the late lamented Mendel L. Smith, who assisted appellants' counsel in the defense of the Ethel Kirven suit, brilliant lawyer that he was, failed to have Mr. Kirven testify as to his indebtedness to his wife and daughter when testifying as to his "net worth," is more than offset by the positive testimony of Mr. Want that, while this case was pending and before the trial thereof on circuit, Mr. Kirven wanted to convey his real estate to his wife and daughter as a protection against his indebtedness to them. Again, the writer would opine that, if Judge Smith knew of this indebtedness, he intentionally refrained from asking concerning same. There is nothing in the record in this case which indicates that Mr. Kirven did not mentally take into consideration his indebtedness to his wife and daughter in arriving at his "net worth."

We are constrained to hold that there was a valuable consideration for the deeds from John K. Kirven to Mrs. Anna B. Kirven and Miss Emmie B. Kirven. We do not hold that there was an adequate consideration. It is unnecessary that we pass upon the adequacy of the consideration.

The next approach to a decision of this case requires a discussion of the testimony relating to the intent on the part of the grantor to hinder, delay, or defraud Miss Blackmon (now Mrs. Warr) in the collection of such judgment, if any, as she procured against him; and, if there was such intent, did the grantees participate in such fraudulent purpose, or was such fraudulent purpose on the part of the grantor imputable to the grantees? We necessarily limit the discussion to Miss Blackmon, for the reason that there were no other creditors except potential plaintiffs, and the conveyance by Kirven of his real estate appears to have acted as a preventive serum.

Undoubtedly there was such an intent and purpose on the part of John K. Kirven up to the point where he acquiesced in the advice of Mr. Want that, if he reserved sufficient of his property with which to pay any judgment it could rea-

sonably be anticipated Miss Blackmon would procure against him, in so far as her claim was concerned, the conveyances would be lawful. The relations between Mr. Want and Mr. Kirven had become strained a considerable time before this, and had so continued. Mr. Want was not representing, and did not represent, Mr. Kirven in the *Blackmon case*. He prepared the answer for Kirven, but not for a fee or any other consideration, and with not the slightest intention of representing him as attorney in the defense of the case. Mr. Want did not then represent, and until 1933 did he ever represent either Mrs. or Miss Kirven. With these facts in mind, and the Law security being reserved, the transaction assumes a different complexion.

Mr. Want, in November, 1930, considered the Law bond and mortgage, knowing the real estate covered by the mortgage, ample reservation to cover any probable judgment Miss Blackmon might recover, and so advised Mr. Kirven. He valued this security at $10,000.00.

While the subsequent acts of Mr. Kirven with reference to the Law papers may throw some light on what may have been his intent on November 1, 1930, when he reserved this property under the advice of fair dealing counsel, yet such subsequent acts cannot affect the grantees unless it be shown that they participated in some act on the part of Mr. Kirven which could be construed as evidencing a fraudulent purpose with reference to the Blackmon claim.

It is a matter of general knowledge that lands in this section of South Carolina dropped to the lowest values in the years 1932 and 1933. Testifying on October 5, 1933, Mr. A. Hyman stated that the Law land was not worth more than $6,000.00, if that much. Mr. Law testified that he gave a certificate in 1931, that this land was worth at least $15.00 per acre.

Although Mr. Kirven had reserved the Law bond and mortgage for the payment of such judgment, if any, which might be recovered against him by Miss Blackmon, in the

spring of 1931, he borrowed from Peoples State Bank of South Carolina (Darlington branch) $775.00, with these papers as security. When his collateral note became due he paid thereon $250.00, and renewed the loan. Before his renewal note became due, the bank closed its doors, and there was no further effort on the part of Mr. Kirven to protect this security. This may be some evidence that there was a fraudulent purpose on the part of Mr. Kirven in reserving only this portion of his property, and conveying his real estate to his daughter and wife, but, if so, this would not be imputable to them unless they in some way participated.

As aforementioned herein, Miss Blackmon had not suffered any discernible physical damages and no actual monetary damage from the alleged assault made upon her by Kirven. While in Darlington County it may have been a foregone conclusion that she would recover a judgment in some amount against Mr. Kirven, it could not have been reasonably anticipated that a judgment would be procured sufficient to consume the Law security, even in its decreasing value due to conditions existing over the entire country.

The fact that the property reserved will not fully satisfy the judgment procured, with interest and costs, when finally obtained, thus fixing the amount of liability, is not within itself sufficient to show a fraudulent purpose, unless, of course, the testimony showed, which it does not, that it could not have been reasonably expected to be sufficient.

But in view of the action taken by Emmie B. Kirven in preserving the Law security for the benefit of the Blackmon judgment, it becomes unnecessary to pass upon the purpose of Mr. Kirven on November 1, 1930.

If Mr. Kirven had a fraudulent purpose in conveying his real estate to his wife and daughter, the daughter affirmatively showed that it was her purpose to preserve the security set aside for the payment of the Blackmon judgment by paying the back taxes, and arranging to pay and paying the balance due Peoples State Bank of South Caro-

lina, releasing the security from its lien, and claiming an interest in the security only to the extent she had expended in preserving same.

Digressing for the moment, the record shows that Mr. Want made the Kirven loan for the bank. He knew that the Law bond and mortgage was being retained by Kirven in trust for the purpose of paying such amount as Miss Blackmon recovered. At the time he made the loan, he overlooked this fact. Had the point been made, the bank took this security subject to any lien Miss Blackmon secured thereon, and Miss Kirven of course took no greater right with knowledge which she had acquired as to the status of the Law papers, and therefore paid the note secured by these papers at her peril. However, there has been no appeal from the order of the Circuit Court allowing Miss Kirven a first lien on the Law papers for the amount paid the bank.

All three appellants deny that Anna B. Kirven or Emmie B. Kirven had any information or knowledge of the Blackmon suit until long after the conveyances sought to be set aside had been executed and recorded. Neither Mrs. nor Miss Kirven were present when Mr. Kirven consulted Mr. Want in reference to preparing the deeds. Neither of them had ever consulted him on any matter of business, and he did not represent them in any capacity until long thereafter. Not one witness has testified that he or she had ever informed either Mrs. or Miss Kirven of the Blackmon suit. Not one witness was produced who had ever heard either of them mention the Blackmon suit. The probabilities are that Mr. Kirven's family (wife and daughter) were among the last ones in and around Darlington to learn of the Blackmon suit. It is not unreasonable to presume that Mr. Kirven was not going to "break the news" to them until compelled to do so; and this is not the class of information that some outsider is going to assume the burden of carrying to the wife and daughter. It was probably a "much talked of" case *in the absence of the Kirvens.*

The circuit decree cites as a circumstance pointing to knowledge on the part of Kirven's wife and daughter of his intent with regard to the Blackmon claim, when he transferred all of his property to them, save the Law bond and mortgage, that Miss Kirven is a law graduate and a member of the bar of this State. We fail to see that this is indicative of anything in connection with the transaction. She never undertook to practice law, and was not in "touch" with pending litigation in the Courts. The fact that she also took a course in engineering has equal probative value.

There is no conflicting testimony. The findings of the Circuit Judge being based entirely on inferences growing not out of the testimony but out of the realm of speculation, and there being positive testimony to the contrary, we must hold that there is no evidence that the grantees participated in the fraudulent purpose of John K. Kirven to hinder, delay, or defraud Miss Blackmon, if this was his purpose in making the deeds attacked. We are satisfied that the clear result of undisputed testimony points manifestly to a different conclusion from that reached by the Circuit Judge.

Not having held herein that Mr. Kirven did not have a fraudulent intent and purpose in conveying his real estate to his wife and daughter, it is necessary to discuss, granting that the conveyances were fraudulent on the part of John K. Kirven, if his fraud is imputable to his wife and daughter. Counsel for respondent cite the case of *Miller v. Wroton,* 82 S. C., 97, 63 S. E., 62, 449. In that case the husband was hopelessly involved financially and hard pressed by contract creditors. He made a deed for specific property to his wife, the consideration being money she had let him have years prior thereto, and it being alleged by the husband that he was to convey her this property when he came into possession of same thereafter. The wife's testimony was most indefinite concerning the agreement to convey the land, and the Court held that there was created by the agreement an equitable mortgage over the land in favor of the wife. For

this reason, and for the further reason that the conveyance was made by the husband for a fraudulent purpose, and the Circuit Court having held that the testimony showed the husband was acting as the agent for the wife at the time of the making of the deed, which last holding was not appealed from, this Court held that, since the husband was the agent of the wife, his fraudulent act was imputable to her. Although the deed was set aside, the Court left the case open for the wife to establish an equitable mortgage. The *Miller-Wroton case* is clearly not authority for the imputation of fraud on the part of Mr. Kirven to his wife and daughter.

Under the circumstances and facts of the case being considered, there is nothing on which to base imputed fraud to the grantees, especially where the main evidence of fraud on the part of the grantor was an act subsequent to the transaction, and as to such act one of the grantees came to the fore and rescued the property.

Respondent takes the position that, Mr. Kirven having undertaken to reserve property with which to satisfy the Blackmon claim, if he failed to reserve sufficient property, then resort will be had to the property conveyed, on the theory that "one must be just before being generous," and cites the recent case of *Penning v. Reid et al.,* 167 S. C., 263, 283, 166 S. E., 139. This is the law, but it applies solely to voluntary conveyances, and not to conveyances for valuable consideration, and this fact is stressed in the *Penning case,* and the cases cited therein.

We now consider the assignment statute with reference to the conveyances.

This statute (9106) is directed against an insolvent debtor conveying his property, and not against a debtor, who by reason of conveying his property thus becomes insolvent. Where the conveyance is for a fraudulent purpose, and not based upon a valuable consideration, or where the conveyance is for a fraudulent purpose, based upon a valuable

consideration, if the grantees participated in such fraudulent purpose, then the Statute of Elizabeth (8696) applies.

We affirm that portion of the decree of Judge Oxner ordering a foreclosure of the Law mortgage and reading as follows:

"That C. E. Gardner, as receiver for John K. Kirven, do file a supplemental bill in the first above entitled action, naming as defendants Emmie B. Kirven and any other proper parties, asking for the foreclosure of the Fred W. Law bond and mortgage, the title to the property covered by the mortgage now being in the name of Emmie B. Kirven. In that action Emmie B. Kirven is directed to file an accounting of the rents and profits from the Law property, to file her statement of receipts and disbursements, and if it appears in that proceeding that she has not been fully reimbursed for the moneys advanced by her to pay the collateral note at the Peoples State Bank and for other lawful expenditures, she shall have a lien for the balance due her out of the proceeds of the foreclosure prior to the claim of the judgment of Idella Blackmon.

"The Court has reached the conclusion that a fairer realization would be had from this security by foreclosing the mortgage rather than by selling the bond and mortgage at public auction. This conclusion is reinforced by the fact that the title to the property, according to the records, is now in Miss Emmie B. Kirven. Therefore, out of the proceeds of the foreclosure sale there shall first be paid the costs of the action, including reasonable attorney's fees and receiver's commissions to be fixed by the Court, taxes, the lien claim of Emmie B. Kirven, and the balance applied by C. E. Gardner, as receiver, to the receivership costs and expenses and the judgment claim of Idella Blackmon."

We call to the attention of appellants' counsel the inadequate index to the transcript of record.

The decree appealed from should be reversed in so far as it sets aside the conveyances from John K. Kirven to Anna

B. Kirven and Emmie B. Kirven, and directs the sale of these lands if it becomes necessary to resort to same.

MR. JUSTICE FISHBURNE concurs in result.