## 15764

### MATTHEWS v. MATTHEWS *ET AL.*

(35 S. E. (2d), 157)

Appeal from Florence County Court; R. W. SHARKEY, Judge.

*Messrs. McEachin & Townsend,* of Florence, S. C., Counsel for Appellant,

*Messrs. Willcox, Hardee, Houck & Wallace,* of Florence, S. C., Counsel for Respondent,

August 7, 1945.

MR. ASSOCIATE JUSTICE OXNER delivered the unanimous Opinion of the Court.

This is an appeal from an order setting aside and declaring null and void as against the respondent, a judgment creditor, an assignment by C. Colvin Matthews to his· wife, Lillian E. Matthews, of certain permanent disability benefits claimed by the transferor under a policy of insurance issued by the Jefferson Standard Life Insurance Company. The lower Court held the assignment invalid both under the Statute of Elizabeth, Section 8696 of the Code of 1942, and under the Assignment Act, Section 9106 of the Code of 1942.

In 1927 a judgment was obtained against appellant C. Colvin Matthews on a note which he executed in favor of his father, J. W. J. Matthews. In 1938, no effort having been made to revive said judgment, an action was commenced upon the original judgment, resulting in a new judgment for $1,930.48. Execution thereon was duly issued upon which a *"nulla bona"* return was made by the Sheriff of Florence County. No part of the judgment has been paid. Thereafter appellants were examined in supplementary pro-

ceedings before the County Judge of Florence County, appellant C. Colvin Matthews on January 8, 1944, and his wife on January 13, 1944.

Appellant C. Colvin Matthews procured in 1931 a policy of life insurance from the Jefferson Standard Life Insurance Company which contained a disability clause providing for the payment of $30.00 per month in the event he became totally and permanently disabled. Thereafter a claim for total and permanent disability benefits was made and allowed, and the Company paid said amount to the insured from August, 1934, to September 8, 1943, at which time it declined to make further payments, contending that the insured was no longer totally disabled. Appellants claim that on September 11, 1943, the insured assigned to his wife all his interest in said disability benefits by the following instrument: "For value received, I hereby assign, sell unto my wife, Lillian E. Matthews, all monthly benefits due me and to become due me by the Jefferson Standard Life Insurance Company for total, permanent disability benefits to assist her in supporting my family and I agree to turn over to her all checks and sums of money paid me by Jefferson Standard Life Insurance Company after this date for such monthly total and permanent disability benefits. This assignment of monthly benefits is made in policy No. 432774. (Signed) Chester C. Matthews (Dated) 9-11-43."

Respondent commenced this action on January 21, 1944, for the purpose of setting aside the alleged assignment upon the grounds that it was void under the Statute of Elizabeth and constituted an unlawful preference under the Assignment Statute. Appellants denied that there was any fraudulent intent on their part in making and accepting said assignment or that such constituted a preference, and alleged that the assignment was made for a valuable consideration in that it was executed "to partially reimburse" the transferee "for her expenditure made and to be made for the

support of the family." Testimony on the issues presented, which, apart from the documentary evidence, consisted only of an examination of appellants, was taken before the County Judge, who thereafter in a well-reasoned decree held the assignment invalid on both grounds.

It is undisputed that Mr. Matthews is insolvent and that the only asset which he owned was the claim for disability benefits which he contends was assigned to his wife. Mrs. Matthews testified that their home and automobile were purchased entirely with funds previously earned by her while working; that it required about $75.00 a month to support the family, consisting of herself, her husband and two children; that her husband's only contribution to this support was the sum of $30.00 per month which he received as disability benefits from the Insurance Company; that after the Company refused to pay further disability, she alone supported the family; that no consideration was paid when the assignment was executed, but it was agreed that thereafter any disability benefits collected would be paid to her in partial reimbursement for her support of the family; and that her husband dictated to her the terms of the assignment, which she wrote, and same was executed when no one was present. She admitted that she had earned no salary since 1940. The testimony of Mr. Matthews was substantially the same as that of his wife. He admitted that shortly prior to the time in question, he made a settlement with another insurance company from which he received the sum of $1,-500.00. He stated that at that time he owed his wife about $1,100.00 which he paid from the proceeds of this settlement, and the balance of $400.00 was used for the support of himself and the family. His explanation of the assignment in controversy is as follows: "When the Jefferson Standard Life Insurance Company stopped those monthly payments, I had no source whatsoever to support my children and my wife. She had to take this responsibility. * * * I told her

if she would pay the bills, I would turn the monthly benefits over to her when I collected them. She said she would do it provided I would give her an assignment."

It is undisputed that the Insurance Company was never notified of the alleged assignment. It further appears that on December 17, 1943, Mr. Matthews instituted suit against the Insurance Company for the recovery of the unpaid disability benefits and that no reference was made in the complaint to the assignment in question. According to the record, the existence of this alleged assignment was not disclosed until Mr. Matthews was examined in supplementary proceedings on January 8, 1944. Two days later, on January 10, 1944, an amended complaint was served in which his wife was designated as a party defendant. In this complaint it is alleged that the assignment was made "as security for money advanced and to be advanced, for the support of plaintiff's family, and for this reason she (Mrs. Matthews) is made a party to this action."

The lower Court held that the assignment was voluntary and without consideration as against the respondent, an existing judgment creditor when the assignment was made. We are in accord with this conclusion.

The following from 37 C. J. S., Fraudulent Conveyances, § 149, page 970, is sustained by the great weight of authority: "An agreement for future support is not a sufficient consideration as against existing creditors for a conveyance of his property by a debtor if the conveyance is of all the debtor's property. * * * Some decisions base this rule on the ground that the conveyance is voluntary, and others take the view that the consideration is valuable but the transaction is wanting in good faith as to creditors. * * * The law does not permit one indebted to put his property beyond the reach of creditors and at the same time enjoy the benefit thereof. The grantor must pay his

creditors before providing for his own future". Many of the cases on this question are collected and discussed in an annotation in 2 A. L. R., beginning on page 1438. In *Ryan v. Simms et al.*, 147 Minn., 98, 179 N. W., 683, 684, the Court said: "A voluntary transfer of his property made by an insolvent debtor upon the consideration of a promise of future support is *prima facie* evidence of a fraudulent intent." The rule is stated in *Michaud v. Michaud,* 129 Me., 282, 151 A., 559, 560, as follows: "It is * * * a familiar principle that a conveyance of a debtor's entire property in consideration of his own future support or that of members of his family is purely voluntary and *prima facie* voidable as a fraud upon existing creditors." In speaking of the effect of the intent of the transferee in such a transaction, the Court in *Clowe v. Seavey et al.*, 208 N. Y., 496, 102 N. E., 521, 522, 47 L. R. A. (N. S.), 284, said: "It is of no consequence that the transferee had no intent to hinder, delay or defraud the creditors of the transferror. A person cannot successfully put his property beyond the reach of his creditors by a transfer which secures it to himself and his children, even though the transferee may have the best of motives, and be ignorant of his fraudulent intent." Some Courts hold that such a transfer is void as to creditors, while others refer to such a transfer as *"prima facie"* or "presumptively" void. We need not determine however, which characterization is preferable, as there is nothing in the evidence to rebut the *prima facie* or presumptive showing made. It is well settled that "where transfers to members of the family are attacked either upon the ground of actual fraud or on account of their voluntary character the law imposes the burden on the transferee to establish both a valuable consideration and the *bona fides* of the transaction by clear and convincing testimony." *Gardner v. Kirven,* 184 S. C., 37, 191 S. E., 814, 816, and cases therein cited. It is clear that this burden has not been met.

Appellants contend, however, that the assignment was not made in consideration of future support, but for a present valuable consideration. In support of this contention, it is argued that Mrs. Matthews assumed no binding obligation to support the family "for any time in the future" and that "the contract was of indefinite duration and, therefore, was subject to discontinuance by her at any time," but whether she assumed a valid, binding obligation or not, the agreement purports to secure her for future support and the testimony is to that effect. The following appears in the testimony of Mrs. Matthews:

"Q. What amount of money have you paid Mr. Matthews for signing this paper? A. I haven't paid him anything.

"Q. Have you paid any money to anybody for him on account of him signing this paper? A. No.

"Q. Have you advanced any money to him? A. No.

"Q. Or for his benefit to anyone? Have you? A. No."

Appellants say that Mrs. Matthews commenced furnishing support on September 8th, three days before the date of the alleged assignment, and her doing so for this period constituted a present valuable consideration. The testimony does not disclose the amount expended during these three days, but in any event it could not have been more than nominal. It is further suggested that Mrs. Matthews, relying on this agreement, in good faith supported the family for three or four months before this action was commenced to set aside the assignment and if the assignment is not valid as to future support, it should be sustained to the extent of the support actually furnished by her. There is authority to the effect that if the parties to a conveyance, made in consideration of the future support of the grantor or his family, relying thereon act in good faith and support is actually furnished thereunder, the conveyance will be sustained as to creditors, to the extent of the

value of the support thus furnished. Passing over the question of whether the testimony is too vague and indefinite to afford a basis for allowance of any definite amount during this period (Mrs. Matthews was unable to make any estimate of the amount advanced when examined in supplementary proceedings), it is not at all clear that Mrs. Matthews supported the family on the strength of this assignment. Moreover, under the circumstances Mrs. Matthews must have known that the assignment was made in an effort to defeat the collection of this judgment. Certainly the *bona fides* of the transaction has not been established by clear and convincing testimony.

In concluding the discussion of this phase of the case, it should be stated that no question with reference to homestead has been raised or discussed and, therefore, is not before us.

Having reached the conclusion that the assignment should be set aside as void under the Statute of Elizabeth, it is unnecessary for this Court to determine whether it is also void under the Assignment Act.

Finally, appellants contend that the lower Court erred in holding that Mr. Matthews was not entitled to the benefit of Section 750 of the Code of 1942, which gives authority to a Judge to order any property of the judgment debtor, not exempt from execution, "applied towards the satisfaction of the judgment; except that the earnings of the debtor for his personal services, at any time within sixty days next preceding the order, cannot be so applied, when it is made to appear * * * that such earnings are necessary for the use of a family supported wholly or partly by his labor." We do not think that the disability benefits in question represent "earnings of the debtor for his personal services."

On the trial of this case respondent offered in evidence the testimony of appellants which was taken in the supplementary proceedings. Appellants objected to its admission and their objection was sustained by the lower Court, to which respondent has excepted. The correctness of the transcript of the testimony offered was properly proven by the Court Stenographer and admitted by appellants. Appellants further testified that the testimony given by them in these supplementary proceedings was true. This testimony was very brief and all of it was relevant to the issues being tried. We think it was erroneously excluded. *Dyson v. Insurance Co.,* 176 S. C., 411, 180 S. E., 475. We may say, however, that the material portion of the testimony on each occasion was substantially the same and we would have reached the same conclusion if the testimony in controversy had not been considered.

All exceptions are overruled and the judgment of the lower Court affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and TAYLOR concur.