498 S.E.2d 858

**WINDSOR PROPERTIES, INC., Appellant/Respondent,**

v.

**DOLPHIN HEAD CONSTRUCTION CO., INC., Linda T. Liscio and Ralph Liscio, Respondents/Appellants.**

No. 24755.

Supreme Court of South Carolina.

Heard Sept. 17, 1997.

Refiled March 6, 1998.

M.M. Weinberg, Jr. and M.M. Weinberg, III, both of Weinberg, Brown and McMillan, Sumter, for appellant/respondent.

Linwood S. Evans, Jr., Sumter, for respondents/appellants.

## ORDER GRANTING PETITION FOR REHEARING

Respondents Dolphin Head Construction Co., Inc., Linda T. Liscio, and Ralph Liscio have petitioned for rehearing. We grant this petition without oral argument and order that the opinion heretofore filed, Op. No. 24755, January 26, 1998, be withdrawn and the attached opinion be substituted. The only substantive amendment to the originally-issued opinion appears in the last two sentences of the last paragraph of

Section A. Those sentences are substituted with the following:

Linda has not demonstrated by clear and convincing evidence that the transfer was for consideration and was bona fide. The Statute of Elizabeth was violated. The referee erred in finding otherwise.

IT IS SO ORDERED.

/s/ Ernest A. Finney, Jr., C.J.

/s/ Jean H. Toal, J.

/s/ James E. Moore, J.

/s/ John H. Waller, Jr., J.

/s/ E.C. Burnett, III, J.

TOAL, Justice:

In this action for collection on a note and for reconveyance of property, the plaintiff Windsor Properties appeals the special referee's denial of such reconveyance, and the defendants appeal the referee's denial of their slander of title claim. We affirm in part and reverse in part.

## FACTUAL/PROCEDURAL BACKGROUND

For several years, Randy Blackwell and Windsor Properties[1] had a business relationship with Ralph Liscio ("Ralph") and his wholly-owned company Dolphin Head Construction whereby Windsor would finance the construction and remodeling of houses by Dolphin Head. One of their joint projects—the purchase and renovation of the Brogdon property—is at the center of the dispute in the present case. The parties had planned to renovate this property and to split the profits when the property was sold. In February 1990, Blackwell loaned Dolphin Head $27,650[2] for the purchase and renovation of the Brogdon property. Brogdon was purchased in Dolphin Head's name.

---

1. Windsor Properties is owned by Blackwell and George Jordan.

2. The record is not consistent as to this figure. Blackwell testified to the $27,650 figure; however, Ralph actually testified to a higher amount. Ralph testified that Blackwell wrote a check for $38,000 to Dolphin Head. Blackwell then advanced another $13,000 for renovations.

Ralph's wife, Linda Liscio ("Linda"), owned a piece of property called the Pointer house. On October 26, 1990, Windsor Properties made a loan in the amount of $127,000 to Linda, taking as security her equity in the Pointer house. This money was to be used to complete the Brogdon property. Windsor got back all of the money due it on the $127,000 loan.

Linda and Ralph decided to list for sale both the Brogdon property and the Pointer house; they would move into whichever house did not sell first. Blackwell knew that Linda's intent was to end up with one of these two houses. The Pointer house was sold January 1, 1992.

In February 1992, Ralph approached William Coffey ("Attorney") about deeding Brogdon from Dolphin Head to Linda. A deed was prepared by Attorney to convey the property. The deed reads, "Five dollars and no other consideration." Attorney testified that he did not recall having any input into the fact that the deed recites five dollars and no other consideration. He further stated: "I may have asked if there were any consideration being passed, and I was told no, or we would have put it in there. We always would ask that as a matter of policy." Attorney had no recollection of any money changing hands. Linda testified that she did not pay anything when she received the deed.

In the spring of 1992, Ralph wrote Attorney a letter that listed eight separate debts (totaling some $180,500) he owed Blackwell and Jordan. In the letter, Ralph proposed a scheme for repayment of these debts. Ralph wrote in the letter that he anticipated that in the course of negotiations, Blackwell would bring up the issue of Brogdon house. Ralph stated this property "is in Linda's name; we have a mortgage of $75,000 on it and *in no way will Linda agree* to pledging the remaining equity [on the house]." (emphasis in original). Attorney passed on the letter to Blackwell. Blackwell testified that he did not know, prior to receiving this letter, that the property had been transferred to Linda.

Soon after the letter was sent, Ralph negotiated Dolphin Head's debt with Windsor, and they reached an agreement on May 1, 1992. Dolphin Head executed a promissory note and a loan agreement in favor of Windsor in the amount of $110,092. The note was personally guaranteed by Ralph. At the same

time, Windsor received a confession of judgment from Dolphin Head and Ralph. The confession states that Dolphin Head and Ralph are indebted to Windsor in the amount of $110,092.

In August 1993, Ralph and Linda contracted to sell the Brogdon property to certain purchasers. When Blackwell heard about the proposed sale, he filed a lis pendens.

In September 1993, Windsor brought this action against Dolphin Head, Ralph, Linda, and another party. The complaint alleged that the May 1, 1992 note executed in favor of Windsor for $110,092 was in default. It moreover alleged that Ralph conveyed the Brogdon property to Linda for no consideration, thereby depriving Windsor of the right to obtain satisfaction of all proceeds due to it by Dolphin Head. Windsor prayed for an order reconveying the Brogdon property to Dolphin Head. The complaint additionally alleged that Dolphin Head and Ralph had defaulted on a $50,000 loan.

In their answer, Dolphin Head and Ralph declared that they had executed a loan agreement, promissory note, and confession of judgment to memorialize the indebtedness to Windsor, and admitted that the note was in default. They also admitted that Dolphin Head had conveyed the Brogdon property to Linda. By way of counterclaim against Windsor, they alleged intentional interference with contract and slander of title. They specified that "By deed dated February 6, 1992, Defendant Linda Liscio became the owner of the [Brogdon] property...." It was further declared that on August 19, 1993, Linda entered into a contract for the sale of the Brogdon property to a third-party. On September 13, 1993, Windsor filed a lis pendens that prevented her from conveying title in accordance with the terms of the contract and created a cloud on the title, causing her damages of $175,000.

The matter was referred to a special referee to conduct a hearing and issue an order directly appealable to this Court. The referee held that Windsor should be awarded $107,092, with interest, and $36,934, with interest, against Dolphin Head and Ralph individually, as well as $10,000 in attorneys' fees. The order further found that Linda had paid adequate and valuable consideration for the transfer of the Brogdon property by Dolphin Head. Even though there was no consideration

exchanged when the deed was delivered, Linda had already reimbursed Blackwell for the purchase price.

In relation to the slander of title counterclaim against Windsor, the referee held that the lis pendens on the Brogdon property should be canceled; however, there was no evidence that Windsor acted maliciously when it caused the lis pendens to be filed against the Brogdon property.

Both parties have appealed. Windsor argues on appeal that the referee erred in finding that the transfer of the Brogdon property was not fraudulent within the meaning of the Statute of Elizabeth. The Liscios have appealed the referee's denial of their slander of title claim.

## LAW/ANALYSIS

### A. STATUTE OF ELIZABETH

Windsor contends that Dolphin Head's transfer of the Brogdon property to Linda was fraudulent under the Statute of Elizabeth.[3] We agree.

The Statute of Elizabeth, as codified in S.C.Code Ann. § 27–23–10 (Supp.1997), provides in relevant part:

Every ... conveyance of lands ... which may be had or made to or for any intent or purpose to delay, hinder, or defraud creditors and others of their just and lawful ... debts ... must be deemed and taken ... to be clearly and utterly void, frustrate and of no effect, any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding.

We have held that under this statute, conveyances shall be set aside under two conditions: First, where the transfer is made by the grantor with the actual intent of defrauding his creditors where that intent is imputable to the grantee, even though there is a valuable consideration; and, second, where a transfer is made without actual intent to defraud the grantor's creditors, but without consideration. *McDaniel v. Allen*, 265

---

3. The Liscios initially argue that Windsor's Statement of Issue on Appeal does not comply with Rule 207(b)(1)(B), SCACR, which requires that the statement be "concise and direct." This argument is without merit. Windsor's Statement of Issue on Appeal does concisely and directly identify the question before this Court.

S.C. 237, 217 S.E.2d 773 (1975). The present case involves the second scenario envisioned by *McDaniel.* If the transfer was not made on a valuable consideration, no actual intent to hinder or delay creditors needs be proven. Here, there is extensive evidence that Dolphin Head received no consideration for its transfer of Brogdon to Linda. The deed transferring the property stated: "Five dollars and no other consideration." The attorney who drew up the deed testified that he had no recollection of any money changing hands. Linda herself testified that she did not pay anything when she received the deed. On appeal, the Liscios essentially argue that consideration existed in the form of the thousands of dollars Linda advanced for the purchase and renovation of Brogdon. There does not exist clear and convincing evidence of this.

It is well-established that:

Where transfers to members of the family are attacked either upon the ground of actual fraud or on account of their voluntary character, the law imposes the burden on the transferee to establish both a valuable consideration and the bona fides of the transaction by clear and convincing testimony.

*Gardner v. Kirven,* 184 S.C. 37, 41, 191 S.E. 814, 816 (1937); *see also Coleman v. Daniel, II,* 261 S.C. 198, 199 S.E.2d 74 (1973); *Matthews v. Matthews,* 207 S.C. 170, 35 S.E.2d 157 (1945); *Matthews .v. Montgomery,* 193 S.C. 118, 7 S.E.2d 841 (1940); *First Union Nat. Bank v. Smith,* 314 S.C. 459, 445 S.E.2d 457 (Ct.App.1994). Here, the property was transferred from Dolphin Head, wholly-owned by Ralph, to Linda. Accordingly, because this was in reality an intra-family transfer,[4] the law imposes on Linda the burden of establishing by clear and convincing evidence that there was consideration and that the transaction was bona fide.

Linda asserts that she made over $168,000 in payments for the Brogdon property. An examination of the record reveals that the maximum she could have paid, during the period preceding the conveyance of property to her, was $40,965 to Blackwell for the purchase price of Brogdon, and $79,528 for

---

4. Linda testified, "Ralph Liscio and Dolphin Head to me were the same."

other costs connected to Brogdon. These numbers in isolation would suggest that she has conveyed valuable consideration for Brogdon; however, there are a number of problems with these figures. First, the record contains no documentary evidence of these payments besides a single chart prepared by Linda listing her contributions. The chart references attachments (e.g. copies of checks), but none of these have been included in the record on appeal. Because the law imposes on Linda, as the transferee, the burden of establishing the validity of the transfer, she has the responsibility of providing an adequate record. *Cf. General Accident Ins. Co. v. Safeco Ins. Companies*, 314 S.C. 63, 443 S.E.2d 813 (Ct.App.1994).

Second, assuming these contributions were being made, they were offered at a time when Dolphin Head was still showing signs of ownership of the property. This same chart shows that in March 1991, Dolphin Head pledged the Brogdon property as security for a $31,849 mortgage loan, which was to be "used by Dolphin Head for operating capital." Third, it is unclear that the payments were going to Dolphin Head: One check is listed as being made out to a plumber; another is described as being made out to "South Carolina Federal for application to debt incurred to renovate Brogdon House."

The other major problem with Linda's argument—that she gave valuable consideration—is that it contradicts the position she took at the hearing before the referee. There, the Liscio's attorney stated that the crux of their argument was not on the basis of consideration, but rather, on the basis of a prior satisfaction:

> There was no money paid for the deed at the time the deed was delivered. We concede that. There's never been a question about that. The evidence has already been introduced that *Dolphin Head didn't buy this property. Mr. Blackwell bought the property. He put up the money. Linda Liscio gave him the money back. That's our position with regard to the deed.* We don't want there to be any misunderstanding about any—we don't claim that there was any money given in exchange for the deed.... *Our contention is Mr. Blackwell ... bought the property. Mrs. Liscio*

*gave him his money back, and then she funded the renovation.*

(emphasis added).

Finally, we reject Linda's argument because it contravenes the purpose of the Statute of Elizabeth, which aims to prevent persons from defrauding creditors by transferring their assets to third-parties. The focus of the Statute is whether the grantor has reserved sufficient assets to satisfy his obligations:

> Where a conveyance is made without an actual intent to defraud but without consideration, it is said that the conveyance will stand if the grantor reserves a sufficient amount of property to pay his creditors. But this means a sufficient amount of property not merely at the time of the transfer, but an amount from which in the final analysis the creditors are able to collect their indebtedness in full.

*Gardner*, 184 S.C. at 42, 191 S.E. at 816 (internal citations omitted). In this case, the deed transferring the property to Linda was executed three months before Ralph and Dolphin Head executed a note and confession of judgment evidencing their $110,092 debt to Windsor. The deed was executed approximately two months before Ralph wrote Attorney and informed him that he owed Windsor some $180,500. Dolphin Head and Ralph are insolvent. The conveyance will not stand here because Dolphin Head and Ralph have not reserved a sufficient amount of property to pay their creditor. Linda has not demonstrated by clear and convincing evidence that the transfer was for consideration and was bona fide. The Statute of Elizabeth was violated. The referee erred in finding otherwise.

## B. LIS PENDENS

The Liscios have cross-appealed, raising one issue. They assert that the referee erred in concluding there was no evidence that Windsor was acting maliciously when it filed the lis pendens against the Brogdon property, thereby slandering the title to this property. Because we set aside the transfer of Brogdon from Dolphin Head to Linda, the Liscios have no title to this property, on the basis of which they may assert a slander of title action.

## CONCLUSION

Based on the foregoing, the referee's order is REVERSED on the issue of the violation of the Statute of Elizabeth. Accordingly, the transfer of the Brogdon property from Dolphin Head to Linda is set aside. The referee's order is AFFIRMED on the issue of slander of title.