19823

Margaret Patrick WRIGHT, Appellant, v. W. M. PATRICK, Respondent

(205 S. E. (2d) 175)

*Messrs. Melvin L. Roberts* and *Levy S. Alford,* of York, *for Appellant,*

*Messrs. George A. Gill, Jr.,* of Rock Hill, and *Robinson, McFadden, Moore & Pope,* of Coumbia, *for Respondent,*

*Messrs. Melvin L. Roberts* and *Levy S. Alford,* of York, *for Appellant,* in Reply.

May 9, 1974.

LITTLEJOHN, Justice:

This is an action in equity for the specific performance of an oral contract to make a will alleged to have been entered into by the plaintiff-appellant, Margaret P. Wright,

with her grandmother, Mrs. Margaret A. Patrick, who died intestate on October 8, 1972. The defendant-respondent, W. M. Patrick is the plaintiff's father and the son and sole heir at law of Mrs. Patrick.

Pursuant to the provisions of South Carolina Code § 10-1057 (1962), and with the consent of counsel for both sides, certain issues were submitted to a jury, and a special verdict on the basic factual questions involved in the litigation was rendered by it favorable to the plaintiff. It is from the trial judge's order granting the defendant's motion for judgment *non obstante veredicto* that the plaintiff has appealed.

While six questions are propounded by the plaintiff in her brief, under the view we take we need answer only a single inquiry: Upon a consideration of all of the facts and surrounding circumstances, did the trial court err in refusing to lend to the plaintiff its equitable power to specifically enforce a contract to make a will?

In her complaint the plaintiff alleged that in July 1970 she and Mrs. Patrick agreed that in exchange for the plaintiff coming to the city of Rock Hill, South Carolina, with her husband and child, and devoting her time to helping Mrs. Patrick in her home and in her business, taking care of her during illness, and looking after her general welfare and comfort for the remainder of her life, Mrs. Patrick would bequeath and devise certain personal and real property to the plaintiff. It was further alleged that the plaintiff accepted, and fully performed her part of, the contract, but that Mrs. Patrick died about 27 months later, without leaving a will or other instrument conveying said property to the plaintiff.

The defendant's answer, although detailed in nature, may be fairly summarized as a denial of all of the material allegations of the complaint.

Mrs. Patrick was seventy-seven years of age at the time of her death. She had been a widow for many years, living in a large residence on Oakland Avenue in Rock Hill. There

were five rooms or apartments in the dwelling and either seven or nine mobile homes on the premises which she rented. Several of the mobile homes on the premises were the property of the defendant. The plaintiff lived with Mrs. Patrick from the time she was an infant until she was married to Jimmie Wright in 1961. This was due to the fact that the defendant and his wife were separated while the plaintiff was an infant and there is no question but that the relationship of the plaintiff and Mrs. Patrick was substantially that of daughter and mother. The plaintiff and Jimmie Wright were divorced in 1968, and shortly thereafter she moved to Florida to live with her mother and remained about three months. In January or February of 1969, she returned to Rock Hill and moved back into the home of Mrs. Patrick. After returning to Rock Hill, she began commuting to work in Charlotte, North Carolina, where she was employed until April of 1970. In July 1970, the plaintiff remarried Jimmie Wright and thereafter lived either with Mrs. Patrick in her Oakland Avenue home in Rock Hill or in Mrs. Patrick's cabin on the Catawba River, several miles away.

The principle witness for the plaintiff was her husband, Jimmie Wright. He testified that in July of 1970, on a Sunday afternoon, Mrs. Patrick told the plaintiff in his presence that she was not going to have anybody to take care of her when she was older and that if plaintiff, her husband, and their son would stay with her and help her, she would leave her property to the plaintiff with the exception of some property on Blackmon and Workman Streets, which she wanted to leave to the defendant. He stated that the plaintiff agreed to this at the time. He further testified that the plaintiff's duties were to do housework, cooking, helping Mrs. Patrick when somebody moved out of the apartments, and other general duties relating to the rental of the property and to Mrs. Patrick's welfare.

Mrs. Patrick was an industrious, independent, business woman possessed of considerable vigor up until shortly be-

fore her death. The plaintiff devoted time and attention to her after July 1970, but not greatly, if at all, different from the time and attention she devoted prior thereto. It is a fair summary of the testimony that during a good part of the time from July 1970 to the date of Mrs. Patrick's death, the plaintiff and her family maintained residence at the river cabin rather than at Mrs. Patrick's home on Oakland Avenue. The plaintiff admits residing at the river, but testified that she came daily to the home of Mrs. Patrick to assist with chores. Her activities were such as to lead the trial judge to the conclusion that the evidence did not support the finding that she complied with her part of the alleged contract.

While the complaint asserts that part of the alleged agreement between the plaintiff and Mrs. Patrick was that the former would come to Rock Hill and perform certain duties, it is uncontradicted that the plaintiff was living in Rock Hill with Mrs. Patrick and had been for some time prior to July 1970, the date of the alleged contract. It further appears from the testimony that the plaintiff had ceased to work in Charlotte in April of 1970, and that she was not induced by the alleged contract to quit work.

The other principle witness relied upon by the plaintiff was her cousin, Ronnie B. Hall, who testified that Mrs. Patrick had confirmed to him a few months after July 1970 that she had agreed with the plaintiff to will all of her property to her except the lots hereinabove mentioned, if the plaintiff would stay with her and perform certain services.

At the time of Mrs. Patrick's death, the defendant was seriously ill in the Veterans Hospital in Columbia. The plaintiff attempted to obtain letters of administration on the estate, but was unsuccessful due to the priority of appointment allowed the defendant.

As indicated hereinabove, the issues were submitted to a jury, and the following verdict was rendered by it on the factual questions submitted by the court:

"Question Number One: Did Margaret Patrick Wright, the Plaintiff, and Margaret A. Patrick, deceased, enter into a contract or agreement in July, 1970, whereby Maggie A. Patrick agreed to Will to Margaret Patrick Wright certain property at her death in consideration of Margaret Patrick Wright performing certain personal services for her during the remainder of her life?

"Answer: Yes.

"Question Number Two: If the answer to Question Number One is yes, did Margaret Patrick Wright, Plaintiff, fully perform the services for which she was obligated under said contract?

"Answer: Yes.

"Question Number Three: If the answers to Questions Number One and Two are yes, what property did Maggie Patrick, deceased, contract to Will Margaret Patrick Wright?

"Answer: We, the Jury, find for the Plaintiff, Margaret Patrick Wright, all properties, both real and personal, located on Oakland Avenue, Rock Hill, South Carolina, and the Catawba River Section of York County."

This proceeding is, of course, one of equitable jurisdiction, wherein the plaintiff has asked the equity court to lend its power of specific performance to enforce an oral contract to make a will. It is basic that the granting of a decree requiring specific performance is not a matter of absolute right, but instead rests in the sound discretion of the court before which the application is made. Cases collected, 17 South Carolina Digest Specific Performance, Key 8 (1952, Cum. Supp. 1973).

Section 10-1057, referred to hereinabove, provides, "In all equity causes in the courts of common pleas of this State the presiding judge may, in his discretion, cause to be framed an issue or issues of fact to be tried by a jury."

Section 10-1457 of the Code (1962), in relevant part, states, "The findings of fact upon issues tried by a jury under § 10-1057 shall be conclusive of such issues."

The plaintiff argues that the findings of the jury, first, that a contract was entered into and, secondly, that she fully performed the services for which she was obligated under said contract, entitles her to ultimate relief sought. At most, § 10-1457, coupled with § 10-1057, makes the jury's findings conclusive on solely those particular matters submitted to it. While a jury may determine factual matters in an equity proceeding, a jury cannot grant the ultimate relief sought in this instance. Only an equity court in its discretion can grant a decree requiring specific performance of a contract to make a will, and we are not prepared to say that the trial court erred in refusing to do so upon the facts and surrounding circumstances of this case.

The discretionary power of an equity court to decree specific performance can never come into question or be exercised until and unless it first be factually established that there was a contract and that the promisee performed. To hold that specific performance follows as a matter of right from jury findings such as those herein would be in effect to hold that the court delegates its discretionary powers to the jury when factual issues are submitted to it. This we are unwilling to do.

In *Flowers v. Roberts,* 220 S. C. 110, 66 S. E. (2d) 612 (1951), the contract to make a will sought to be specifically enforced was in writing and was factually established by the introduction into evidence of the written instrument. Notwithstanding, this Court refused to lend its equity powers to the promisee therein, stating:

"The rule is well settled 'that specific performance is not a matter of absolute right, but rests in the sound discretion of the Court, guided by established principles, and is exercised by a consideration of all the circumstances of each particular case.' *Masonic Temple, Inc., v. Ebert,* 199 S. C. 5, 18 S. E. (2d) 584, 590. The statement is made in appellant's brief that this discretionary power does not exist when the contract is in writing. We know of no authority for

that view. The principle just stated has been applied in actions to enforce specific performance of contracts to devise real estate in consideration of the rendition of personal services. The Court had under consideration such a contract in *Samuel v. Young*, 214 S. C. 91, 51 S. E. (2d) 367, 370, where it was stated: 'It is a well established rule that a party cannot demand the specific performance of a contract of this kind as a matter of right, but that the exercise of this power rests in the sound discretion of the court, in view of all the surrounding circumstances.' "

*Holsz v. Stephen*, 362 Ill. 527, 200 N. E. 601 (1936), was an action to specifically enforce an oral contract to make a will. The court therein refused to do so, holding:

"Even where the terms of the contract are clear, certain and unambiguous, specific performance is not a matter of right, but rests in the sound discretion of the court to be determined from all the facts and circumstances. . . . Where the promisee shows no substantial change for the worse in his position in consequence of the agreement, relief will be denied." (Citations omitted.)

Under Supreme Court Rule 4, § 8, this Court may affirm the trial court upon any ground appearing in the record. Under the circumstances of this case, we regard the order from which this appeal is prosecuted as nothing more nor less than a denial of the ultimate relief sought, for it is implicit therein that the trial judge was dissatisfied with the justice in the case. He said:

"I have read and re-read the testimony in this case, and it is my judgment that the evidence, when all facts are considered, is insufficient to meet the high standard of proof required to allow the Plaintiff to prevail, and that this Court was in error in submitting the issues to the jury. While this Court is fully cognizant of the general rule that the credibility of the witnesses and the weight to be accorded the evidence' is normally the exclusive province of the jury, there is little in this case (in its present posture) that char-

acterizes it as 'normal' from either the standpoint of procedural or substantive law. This Court cannot escape the responsibility of deciding not whether there was *any* evidence to warrant submission of this case to the jury, but whether the evidence was of sufficient quality, in the light of the high standard of proof required, to warrant the submission of the issues to the jury, viewing the evidence in the light most favorable to the Plaintiff. The conclusion herein reached is particularly strengthened by the casual nature of the conversations relied on by Plaintiff to prove her case, the fact that Plaintiff's life style was changed little after the alleged. contract was made, and the inconsistent actions of the Plaintiff after the death of her grandmother in applying for letters of administration and only thereafter asserting the position here taken."

We have held in *Vereen v. Bell,* 256 S. C. 249, 182 S. E. (2d) 296 (1971), that in equity cases it is the province of this Court to review the record and determine the issues for ourselves. We need not necessarily disagree with the verdict of the jury to reach the conclusion, as did the trial judge, that the plaintiff is not entitled to specific performance. With or without a scintilla to support the jury verdict, we are of the opinion that the discretion of the court should not be exercised to grant the ultimate relief sought.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.