Ralsa F. DURHAM, Appellant v. Robert BLACKARD, Respondent, and
Karl W. McMillan, Impleaded Defendant, South Carolina Federal Savings Bank, Intervening Defendant-Respondent.

(438 S.E. (2d) 259)

Court of Appeals

*Donald J. Budman* of *Solomon, Kahn, Budman & Stricker,* Charleston, *for appellant.*

*A. Arthur Rosenblum,* Charleston, *Reese I. Joye, Jr.,* N. Charleston, and *Thomas E. Lydon, III,* Columbia, *for respondents.*

Heard Oct. 6, 1993.

Decided Nov. 8, 1993.

CURETON, Judge:

The appellant, Ralsa F. Durham (Durham), brought this action to enjoin the respondent/creditor, Robert blackard (Blackard), from selling a 5-acre tract of land under an execution of judgment against Durham's predecessor in title, Karl W. McMillan (McMillan). Blackard impleaded McMillan, and alleged the deed from McMillan to Durham was a voidable transfer under the Statute of Elizabeth.[1] South Carolina Federal intervened and brought cross-claims based on a judgment it had obtained against McMillan. McMillan never responded and was declared in default.

Blackard then moved for summary judgment. The court scheduled the hearing on the motion for the day prior to the scheduled hearing on the merits. At the summary judgment hearing, the parties agreed to submit the case to the court for a decision on the merits. After hearing arguments and receiving exhibits, the court found the conveyance from McMillan to Durham was without consideration and with the intent to defraud creditors in violation of the Statute of Elizabeth, and therefore was void. Durham appeals. We affirm.

Durham, a military physician, testified that around 1982 or 1983, he and McMillan went into business together raising Arabian horses. He stated that a check, dated August 16, 1983 made payable to CAK Enterprises in the amount of $j70,000 was "for me [Durham] to go into business with Karl to have this farm to raise horses." It was "for expenses on horses and other things." This $70,000, he testified, was "either a loan or I was going to be a half owner, or a part owner, of this partnership we intended to have . . . I was a full partner, but if he [McMillan] wanted to buy it out, he could pay me back." Durham stated that he was supposed to have a definite interest in the property as a result of paying this money. He further stated he entered into this venture with McMillan because they had an established relationship and were best friends.

Because Durham was deployed out of the county in 1983, he

---

[1] S.C. Code Ann. §§ 27-23-10 to -90 (Law. Co-op. 1991).

entrusted McMillan with handling all of his financial affairs, including the details of their partnership, through a power of attorney. Durham identified another check for $25,000 which he stated was related to the purchase of the horse farm property. This check was written by McMillan. Durham stated that McMillan often used his money without asking or telling Durham what it was for. However, Durham testified that in response to an inquiry he made in 1986, McMillan assured him that he could take the horse farm property if McMillan did not pay him back.

On October 31, 1989, McMillan deeded the horse farm property to Durham. The $10 consideration typed on the face of the deed had been stricken out and $70,000 inserted. Durham testified that the change of the ten dollar consideration to seventy thousand was in McMillan's handwriting. Durham does not know why the change was made, and he was not present when the deed was executed.

Durham conceded that this deed was never delivered to him. In fact, he stated he did not know anything about the transfer and had not discussed the transfer of the property with McMillan for the "past few years." He was never told he was going to get a deed and did not have the original and had never seen it. He saw a copy of the deed for the first time the day before his deposition. Moreover, McMillan did not relinquish possession of the property to Durham. Durham never paid taxes on the property, never received a tax bill, never erected anything on the property nor did he do anything to exercise ownership rights over it.

Furthermore, the attorney who drafted the deed advised McMillan that pursuant to McMillan's instructions the title had not been checked, and he warned that if there were any judgments against McMillan the deed might be set aside.

Durham admitted he had knowledge that McMillan was in financial difficulty prior to the property being deeded to him, but he was not aware of the judgment against McMillan. He also knew McMillan was having difficulty with creditors. When McMillan's financial problems amassed, it was Durham who suggested he file bankruptcy.

On October 28, 1988, Blackard obtained a judgment against McMillan in the amount of $132,000 actual and $5,000 punitive damages. This judgment was not properly recorded in the in-

dices of the Dorchester County Court until October 24, 1990. Judgments by other parties were obtained against McMillan and properly recorded in November 1989, January, March, May, June and July 1990.

Durham learned he had an interest in the subject property when he received notification from the sheriff that it was to be sold under Blackard's judgment. He then brought this action to enjoin the sale. After considering all the evidence, the trial judge found (1) that the conveyance lacked consideration; (2) that the conveyance was done with the intent to defraud creditors; and (3) that McMillan was having substantial financial difficulties at the time of the transfer. On appeal, Durham argues the trial judge erred in granting summary judgment because genuine issues of material fact exist.

We first note that at the hearing on the motion for summary judgment, the court suggested and all of the parties agreed that the court would hear this matter on the merits and decide all of the issues since all the evidence to be produced by the parties at the trial was before the court.[2] It was agreed that the judge could grant Blackard's motion for summary judgment or grant Durham's prayer for affirmative relief. Consequently, the ruling of the trial judge must be construed in light of the method selected, without objection, to hear this case.

By submitting the case to the judge on the merits, the judge was given the authority to decide all factual disputes. *See Southern Ry. Co. v. Sur. Ins. Co.*, 249 S.C. 407, 154 S.E. (2d) 561 (1967) (where party waived right to jury trial by consenting to allow the court to dispose of the case, this issue could not be raised on appeal); *Bestobell Seals v. Valtrol, Inc.*, — S.C. —, 424 S.E. (2d) 560 (Ct. App. 1992) (the confusing manner in which the summary judgment hearing was handled could not be raised on appeal where during the hearing the appellant accepted, without objection, the judge's decision on how to conduct the hearing). Thus, having agreed to submit the case to the court at the summary judgment hearing, Durham cannot now appeal the manner in which this case was decided.

---

[2] The evidence for trial consisted only of court records and the deposition of Durham.

In *First State Sav. & Loan Ass'n v. Nodine*, 291 S.C. 445, 354 S.E. (2d) 51 (Ct. App. 1987), Nodine appealed the trial court's grant of a directed verdict for First State in a Statute of Elizabeth case. This court noted that the action was in equity, so that a jury verdict would have been advisory since the parties did not express the intent to be bound thereby. We accordingly treated the case as one tried in equity, and reviewed the record to determine the facts for ourselves. We did not apply the scope of review applicable to appeals from the grant of a directed verdict motion.

Likewise, since this is an equity matter tried by the court and in light of the fact that the case was submitted to the court on its merits and in light of the court's ruling on this record, we have reviewed the entire record and determined the facts according to our view of the preponderance of the evidence. *See Wright v. Patrick*, 262 S.C. 434, 205 S.E. (2d) 175 (1974).

Under the provisions of the Statute of Elizabeth, every conveyance made ". . . for any intent or purpose to delay, hinder or defraud credits and others of their just and lawful actions, suits, debts . . . shall be deemed and taken . . . to be clearly and utterly void, frustrate, and of no effect. . . ." S.C. Code Ann. § 27-23-10 (Law. Co-op. 1991).

In interpreting this statute, our courts have held that conveyances shall be set aside under two conditions.

First, where the challenged transfer was made for a valuable consideration, it will be set aside if the plaintiff establishes that (1) the transfer was made by the grantor with the actual intent of defrauding his creditors; (2) the grantor was indebted at the time of the transfer; and (3) the grantor's intent is imputable to the grantee. Second, where the transfer was not made on a valuable consideration, no actual intent to hinder or delay creditors must be proven. Instead, as a matter of equity, the transfer will be set aside if the plaintiff shows that (1) the grantor was indebted to him at the time of the transfer; (2) the conveyance was voluntary; and (3) the grantor failed to retain sufficient property to pay the indebtedness to the plaintiff in full—not merely at the time of the transfer, but in the final analysis when the creditor seeks to collect this debt. *Dufresne v. Zabinski*, 295 S.C. 1, 366 S.E. (2d) 256 (Ct. App. 1987); *See also Coleman v. Daniel*, 261 S.C.

198, 199 S.E. (2d) 74 (1973); *Gardner v. Kirven,* 184 S.C. 37, 191 S.E. 814 (1936); *Jeffords v. Berry,* 247 S.C. 347, 147 S.E. (2d) 415 (1966).

The finding that the conveyance at issue in this case ∎ was without consideration is supported by the preponderance of the evidence. Durham's testimony establishes that he thought he was loaning the money to the partnership to start it up and obtain an interest in it. The alleged consideration consisted of $70,000 paid to a partnership known as CAK Enterprises and another $25,000 check which was written by McMillan with his power of attorney for Durham to himself. Neither of these checks reflected actual payment for the property in question.

Furthermore, this purported consideration for the deed was made in 1983, but the deed was never actually executed and recorded until 1989. Durham also never saw or received the deed to the premises. Thus, there being no genuine consideration for this transfer, Blackard did not have to prove intent to defraud. Durham does not challenge on appeal that McMillan was indebted to Blackard and that McMillan failed to retain sufficient property to pay his debt to Blackard. Thus, the first two conditions for setting aside the transfer are met.

As to the requirement of a voluntary transfer, Durham ∎ asserts the property's value was somewhere between $125,000 and $130,000 and that he gave $95,000 valuable consideration for the property. A voluntary conveyance is a transfer made in good faith without consideration or for a mere nominal consideration. *Dufresne,* 295 S.C. at 4, 366 S.E. (2d) at 258. A voluntary conveyance which violates the statute will be set aside to the extent of the value of the property transferred less any consideration received in exchange therefore. *Id.* As we noted earlier, we agree with the trial judge that the $95,000 did not reflect payment for the property in question. Thus, the $95,000 was not given in exchange for the property and Durham is not entitled to recoup it. This does, however, satisfy the final condition for setting aside the transfer under the statute.

Moreover, the evidence clearly supports the fraudulent nature of this transaction. The lapse of six years in the recordation of the deed coupled with the close relationship between McMillan and Durham and the threatened and pending litiga-

tion and judgments against McMillan at the time of the transfer implies fraud and secrecy. Even absent fraud this conveyance fails. As this court has often stated, "a debtor must be just before he is generous." *Gardner v. Kirven*, 184 S.C. at 42, 191 S.E. at 816.

Aside from the claim under the statute, the conveyance in this case was still ineffective because admittedly the deed was never delivered to Durham, and Durham never exercised ownership rights over the property. *See* S.C. Appellate Court Rule 220(c) (the appellate court may affirm any ruling, order or judgment upon any ground(s) appearing in the Record on Appeal). A deed is not fully executed unless it is delivered. *Watson v. Cox*, 117 S.C. 24, 108 S.E. 168 (1921); *Gilmore v. Whitesides*, 13 S.C. Eq. (Dud. Eq.) 14 (1837). *See, e.g., Morgan v. Morgan*, 116 S.C. 272, 108 S.E. 110 (1921) (where grantor, after executing deeds conveying the land, retained possession of the land and continued to exercise the rights of proprietorship over it, and continued to hold deeds, the deeds were ineffective; there having been no delivery).

Durham maintains that he is entitled to an equitable lien in the amount of the consideration paid even if the conveyance of the subject property cannot stand as a whole and the transaction is voided under the statute. However, the trial court's order is silent as to Durham's claim for an equitable interest or lien in the property. Durham did not move pursuant to Rule 59(e), SCRCP, for a ruling. This issue is therefore not preserved. *See Hilton Head Resort v. Resort Investment Corp.*, — S.C. —, 429 S.E. (2d) 459 (Ct. App. 1993) (Court of Appeals precluded from treating issue on appeal where lower court did not mention the issue in its order and appellant made no motion pursuant to Rule 59(e), SCRCP, to require lower court to do so); *United Carolina Bank v. Caroprop, Ltd.*, — S.C. —, 429 S.E. (2d) 197 (Ct. App. 1993) (where the trial court did not address the issue, and the appellant did not make a motion for the court to do so pursuant to Rule 59, SCRCP, the issue is not preserved for appellate review).

For all the foregoing reasons, the appealed order is

Affirmed.

HOWELL, C.J., and LITTLEJOHN, A.J., concur.