### 2108

LEASING ENTERPRISES, INC., Appellant v. William C. GOODWIN, Jr., d/b/a Goodwin Lumber and Millwork Company, William C. Goodwin, Jr., and Helen Goodwin, Respondents.

(439 S.E. (2d) 294)

Court of Appeals

*Herbert E. Buhl, III*, Columbia, *for appellant.*

*Herman F. Richardson, Jr.*, Columbia, *for respondents.*

Heard Oct. 5, 1993.

Decided Dec. 13, 1993.

HOWELL, Chief Judge:

This is a suit to set aside a conveyance under S.C. Code Ann. § 27-23-10 (1991),[1] more commonly known as the Statute

---

[1] S.C. Code Ann. § 27-23-10 states, in pertinent part:

Every ... conveyance of lands ... which may be had or made to or for any intent or purpose to delay, hinder or defraud creditors ... shall be deemed and taken ... to be clearly and utterly void. ...

of Elizabeth, initiated by Leasing Enterprises, Inc., against William C. Goodwin, Jr., d/b/a Goodwin Lumber and Millwork Company, William C. Goodwin, Jr., and Helen Goodwin. Following a bench trial, the court refused to set aside the conveyance. Leasing Enterprises appeals. We affirm.

This dispute arises from a term lease contract entered into by Mr. Goodwin whereby he leased a material handling concrete system from Leasing Enterprises. The leasing agreement was executed by Mr. Goodwin as owner and was guaranteed by both Mr. and Mrs. Goodwin.

Almost a year after the execution of the lease agreement, Mr. Goodwin filed a voluntary petition to reorganize his business under Chapter 11 of the United States Bankruptcy Code. The same day Mr. Goodwin filed for bankruptcy, he recorded in the Richland County RMC Office a deed conveying from himself to Mrs. Goodwin their residence at 3730 John Francis Court.[2]

The transfer of the marital residence from Mr. Goodwin recites consideration of "less than $100.00 and assumption of existing mortgage." The value of the property conveyed was approximately $58,000.00 at the time of the conveyance and the property was subject to a mortgage of approximately $8,500.00.[3]

Mr. Goodwin filed for Chapter 11 protection on his attorney's advice to try to enable his business to reorganize and become profitable. The business continued to deteriorate, however, and Leasing Enterprises sought relief from the auto-

---

[2] Before filing the Chapter 11 petition, the Goodwins conferred with an attorney on business and personal matters. Based on the attorney's advice, the Goodwins decided to transfer their personal residence, then in Mr. Goodwin's name, to his wife for estate planning purposes due to differences in ages (Mr. Goodwin is 19 years older than Mrs. Goodwin), the fact that they had a young child, and Mr. Goodwin's health problems (he is diabetic and has prostate cancer). The deed was executed approximately one week prior to filing.

[3] The statement and schedules filed in Mr. Goodwin's Chapter 11 case disclose the transfer as:

"Residence transferred to wife as part of estate plan" in answer to question 14a.—"Have you made any gift, other than ordinary and usual presents to family members and charitable donations, during the year immediately preceding the filing of the original petition herein? (If so, give names and addresses of donees and dates, description, and value of gifts.)"

matic stay of the bankruptcy proceeding so that repossession of the equipment could be pursued in state court.

Subsequently, Mr. Goodwin entered into an agreement that was incorporated into an order of the bankruptcy court. Under the terms of the order, Mr. Goodwin consented to a modification of the stay to allow Leasing Enterprises to regain possession of the leased equipment. This order provided "[t]he parties will have no further obligation to each other." The Chapter 11 case was later dismissed.

Approximately one year later, Leasing Enterprises filed suit against Mr. Goodwin seeking a deficiency judgment. At the time the action was filed, Leasing Enterprises was fully aware of the prior transfer of the marital residence from Mr. Goodwin to Mrs. Goodwin, as well as the fact that Mrs. Goodwin was jointly liable on the lease. Despite that knowledge, Leasing Enterprises chose to sue only Mr. Goodwin, although the order from the bankruptcy court had mutually released Mr. Goodwin and Leasing Enterprises from any further obligations under the lease. Mr. Goodwin filed an answer raising the bankruptcy order as a defense. Mr. Goodwin, however, failed to appear at the hearing.

The court entered a judgment for Leasing Enterprises in the amount of $37,725.40. An appeal was taken and subsequently dismissed, with leave to move before the trial court to vacate the judgment. No motion to vacate the judgment was filed.

The present action to set aside the conveyance was filed in October, 1990. The court found that the transfer was not fraudulent and Leasing Enterprises had not shown prejudice because Leasing Enterprises could have sued the wife along with Goodwin originally.

In interpreting the Statute of Elizabeth, our courts have held that conveyances shall be set aside in two instances:

> First, where the challenged transfer was made for a valuable consideration, it will be set aside if the plaintiff establishes that (1) the transfer was made by the grantor with the actual intent of defrauding his creditors; (2) the grantor was indebted at the time of the transfer; and (3) the grantor's intent is imputable to the grantee. Second, where the transfer was not made on a valuable considera-

tion, no actual intent to hinder or delay creditors must be proven. Instead, as a matter of equity, the transfer will be set aside if the plaintiff shows that (1) the grantor was indebted to him at the time of the transfer; (2) the conveyance was voluntary; and (3) the grantor failed to retain sufficient property to pay the indebtedness to the plaintiff in full—not merely at the time of the transfer, but in the final analysis when the creditor seeks to collect his debt.

*Durham v. Blackard*, Op. No. 2086, — S.C. —, —, 438 S.E. (2d) 259 (S.C. Ct. App. filed Nov. 8, 1993) (Davis Adv. Sh. No. 28 at 11); *Jeffords v. Berry*, 247 S.C. 347, 147 S.E. (2d) 415 (1966). Under either analysis we look to the conduct of the *debtor*. The first test is not applicable because the record reveals no conduct suggesting "actual intent" to defraud creditors. We look, therefore, to the second analysis.[4]

In applying the second test, the language in *Durham* is dispositive because it instructs an equity court to review the facts and "in the final analysis" determine if the *grantor/debtor* has retained enough property to pay the indebtedness "when the creditor seeks to collect his debt." In the case at bar, although the grantor/debtor may have failed to retain sufficient property to pay debts owed at the time of the conveyance, the grantee, a *co-debtor* retained the subject property and it remained within the reach of Leasing Enterprises. Thus, the end result of the grantor/debtor's actions are not detrimental to the creditor. For this reason, the trial judge was correct in refusing to set aside the conveyance.

The facts in the present case are unique in that the conveyance to Mrs. Goodwin was not prejudicial to Leasing Enterprises because it did not place the property beyond Leasing Enterprises' reach because of the personal guarantee of Mrs. Goodwin. Our decision in this case is in line with other jurisdictions that have been faced with similar facts. *See Haskins v. Certified Escrow & Mortgage Co.*, 96 Cal. App. (2d) 688, 216 P. (2d) 90 (1950) (noting as an established point of equity that a creditor does not sustain an injury unless the transfer puts beyond the creditor's reach property that the

---

[4] We note because of our analysis under Durham, we need not reach the question of whether or not Mrs. Goodwin gave valuable consideration.

creditor would otherwise be able to subject to the payment of the debt); 1 GARRARD GLENN, FRAUDULENT CONVEYANCES AND PREFERENCES, § 1 (1940). In conveyances between joint debtors, courts have found no prejudice to creditors and have refused to set aside conveyances as fraudulent. *Van Pelt v. Willemsen*, 208 Iowa 1326, 227 N.W. 110 (1929) (noting it is not fraudulent to creditors if husband paid consideration for property but took title in wife's name when plaintiff was a creditor of both husband and wife); *Nash v. Harman*, 148 Va. 610, 139 S.E. 273 (1927) (when both husband and wife were obligated on note, conveyance of real estate from husband to wife "could not in any way lessen complainant's security, or work a fraud upon his rights").

In view of our disposition of the above issues, we need not address appellant's remaining issues. *See* Rule 220(c), SCACR; *See also Potomac Leasing Co. v. Otts Market, Inc.*, 292 S.C. 603, 358 S.E. (2d) 154 (Ct. App. 1987) (an appellate court may affirm a trial judge's decision on any ground appearing in the record and may affirm the trial judge's correct result even though there may be an error on some other ground).

For the reasons given above, the judgment appealed from is

Affirmed.

CURETON, J., and LITTLEJOHN, Acting Judge, concur.